Nancy Carol **FAUS**, Petitioner, Respondent,

v.

John Jay **FAUS**, Appellant.

No. 81–500.

Supreme Court of Minnesota.

May 21, 1982.

Henson & Efron, Alan C. Eidsness and Sheryl Ramstad Hvass, Minneapolis, for appellant.

Barnett, Ratelle, Hennessy, Vander Vort, Stasel & Herzog, James H. Hennessy and Dale M. Wagner, Minneapolis, for respondent.

AMDAHL, Chief Justice.

This is an appeal from a Hennepin County District Court judgment and amended judgment dissolving the marriage of the parties. Appellant John Faus challenges the division of property and the award of maintenance. We affirm the lower court but modify its decree.

Respondent Nancy Faus commenced this action for dissolution in September 1978. The parties were married on March 15, 1956, and lived together as husband and wife until October 1978. Their marriage was dissolved on August 5, 1980, when John was 48 and Nancy was 47 years of age. The parties have three children, one of whom was a minor at the time of trial.[1]

Respondent Nancy Faus is a high school graduate with no postsecondary education. Prior to marrying appellant and during the first 2 years of the marriage she held various unskilled jobs. She was not employed from 1958 to 1978, when she raised the children and maintained the home. She is presently employed full time as a hotel desk clerk and earns average take-home wages of $495 per month.

Appellant John Faus is a high school graduate and has earned some college credits at the University of Minnesota. He joined the Minneapolis Fire Department in 1957 or 1958 and continues to work there. He earns average take-home wages of

---

1. The parties stipulated at trial that John Faus would pay reasonable child support until the youngest child reached majority in June 1980.

$1,376 per month as a fire department captain. He has also earned some income each year as a window washer, but has done little of that work in the past few years.

The parties' assets consisted of a homestead with a market value of $65,000 at the time of trial, rental property with a market value of $70,000, a balance due of $8,500 under a contract for deed, and appellant's pension benefits, valued at $103,481. The trial court awarded respondent the homestead, one-half interest in the future payments due under the contract for deed, a 50% interest in the present value of the pension plan "subject to any increase or decrease thereon as may occur from time to time in the future," a lien upon the rental property in the amount of $51,740 to secure payment of "maintenance"[2] from appellant's pension plan, and child support. Additionally, the court awarded respondent maintenance in the amount of $350 per month commencing April 1, 1980, and continuing until respondent remarries, appellant retires from the Minneapolis Fire Department, either party dies, or further court order. Appellant was awarded the rental property (subject to the lien), one-half the payments due under the contract for deed, and the remaining proceeds from the pension plan.

Appellant requests this court to remove the lien upon the rental property, to declare the homestead to be a nonmarital asset, and to modify the decree insofar as it grants to respondent future increases in the value of the pension plan. Appellant also contends that the trial court abused its discretion in awarding respondent $350 per month as maintenance. Respondent urges that the decision of the trial court be affirmed on each issue, as its judgment was well within the scope of its statutory discretion: Respondent also requests this court to award attorneys fees.

**2.** The trial court referred to the pension benefits to be paid to respondent upon appellant's retirement as "maintenance." The parties elected to treat this aspect of the property division as maintenance because of the resultant tax advantages to appellant.

**3.** The *Knapp* holding is consistent with the federal courts' construction of the exemption pro-

**1.** The trial court awarded appellant the rental property, a duplex valued at $70,000. However, the court gave respondent a lien on the duplex in the amount of $51,740, which represents one-half the present value of appellant's pension plan, "[t]o secure payment of maintenance by [John Faus] to [Nancy Faus]." The trial court stated that respondent was awarded the lien "in recognition of the exempt nature of [appellant's] pension, all as more fully appears in Section 69.51, Minnesota Statutes." Minn.Stat. § 69.51 (1980), which relates to the firefighter's relief association, provides:

All payments made, or to be made, by any relief association under any of the provisions of sections 69.25 to 69.53 shall be totally exempt from garnishment, execution, or other legal process and no persons entitled to such payment shall have the right to assign the same, nor shall the association have authority to recognize any assignment or to pay any sum on account thereof, and any attempt to transfer any such right or claim, or any part thereof, shall be void.

Appellant contends that the lien upon his rental property was unnecessary to protect respondent's maintenance award because there is a common-law exception to the exemption statute in favor of claims by family members, as opposed to claims by other creditors. In support of this argument appellant cites *Knapp v. Johnson*, 301 N.W.2d 548 (Minn.1980), in which we held that a dependent of a beneficiary was entitled to garnish the beneficiary's interest in an ERISA-regulated pension plan for the purpose of satisfying unpaid child support and alimony obligations. *Id.* at 549.[3] In so holding, we distinguished between creditors

vision of the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001–1381 (1976). In *Cody v. Riecker*, 454 F.Supp. 22 (E.D.N.Y.1978), aff'd, 594 F.2d 314 (2d Cir. 1979), the court concluded that the ERISA exemption provision did not bar a divorced wife's attachment of pension benefits to satisfy arrears in an obligation to provide support.

who are dependents or family members and other creditors, reasoning that Congress enacted ERISA "to provide for the well-being of beneficiaries' dependents." *Id.* However, this court's holding in *Knapp* was based on our interpretation of ERISA, not on section 69.51. While ERISA is silent with respect to involuntary transfers ordered by a court, *see* 321 N.W.2d at 548, section 69.51 makes explicit reference to "garnishment, execution, or other legal process." Thus, the rationale of *Knapp* does not by itself provide an adequate ground upon which to find a family law exception to section 69.51.

The issue has been litigated many times in other jurisdictions and a substantial majority of the decisions has held that dependents' claims for child support or alimony are excepted from similar statutory exemptions. *See, e.g., Mahone v. Mahone,* 213 Kan. 346, 517 P.2d 131 (1973); *Collida v. Collida,* 546 S.W.2d 708 (Tex.Civ.App.1977); *Saunders v. Saunders,* 243 Wis. 94, 9 N.W.2d 629 (1943). Even where the exemption provision is absolute on its face, it has been held that exemptions contained in pension statutes are inapplicable to a claim for alimony or child support. *See, e.g., Fischer v. Fischer,* 13 N.J. 162, 98 A.2d 568 (1953); *Hodson v. New York City Employees' Retirement System,* 243 A.D. 480, 278 N.Y.S. 16 (1935); *Courtney v. Courtney,* 251 Wis. 443, 29 N.W.2d 759 (1947). These courts have reasoned that the purpose of the exemption statutes is to preserve the retirement benefits for the dependents as well as for the pensioner. In *Courtney v. Courtney,* 251 Wis. 443, 29 N.W.2d 759 (1947), the Wisconsin Supreme Court refused to apply a statutory exemption clause to a wife's claim for enforcement of a maintenance award against the ex-husband's police pension fund. After summarizing other decisions, the court stated:

Underlying these decisions is the reasoning that the funds involved, pension funds and disability insurance, are created for the protection, not only of the employee or insured, but for the protection of his family. Similarly, the purpose of exemptions is to relieve the person exempted from the pressure of claims that are hostile to his and his dependents' essential needs. Keeping those purposes in mind, it becomes clear that the Policemen's Annuity and Benefit Fund of Milwaukee is within the reach of a process of the court when it is an alimony judgment that is sought to be enforced.

*Id.* at 449, 29 N.W.2d at 762.

Proponents of the contrary view argue that where the statutory exemption is drafted in such clear and unambiguous language, courts should respect the legislative intent and not carve out exceptions for the pensioners' dependents. However, this court's construction of section 69.51 is consistent with giving the statute full effect. The protection that remains is broad, applying to assignment, garnishment, execution, and other legal process. Moreover, it renders the statute consistent with others that provide methods to enforce the obligor's duty of maintenance and support. *See* Minn.Stat. §§ 518.24, .41–.52, .611, 609.375 (1980). We do not believe that the legislature intended to create an exemption so broad and so inconsistent with the policy that it has declared in other acts. We therefore conclude that appellant's legal dependents should not be classified, for purposes of section 69.51, with strangers holding claims hostile to his interest and their own. Accordingly, we modify the lower court's judgment by removing the lien upon appellant's property.

2. Appellant next contends that the trial court erred by classifying the entire value of the homestead as marital property.[4] In addition, appellant argues that the trial court invaded his nonmarital property[5]

4. "Marital property" is defined in Minn.Stat. § 518.54, subd. 5 (1980), as "property, real or personal * * * acquired by the parties, or either of them, to a dissolution * * * at any time during the existence of the marriage relation between them * * *."

5. There is a presumption that property acquired by either spouse subsequent to the marriage and before a decree of legal separation is marital property. Minn.Stat. § 518.54, subd. 5 (1980). The presumption can be overcome by

without a finding of unfair hardship, as required by Minn.Stat. § 518.58 (1980).[6] We disagree with appellant and affirm the trial court.

John Faus brought $12,000 into the marriage. In 1956 the parties used this money, which covered the entire purchase price, to buy their first home. In 1958 the parties sold the first residence and used the proceeds from that sale ($14,000) to buy their second home. The second home, which is the homestead at issue in this case, cost $18,000. As a result of appreciation and improvements over the years the value of the homestead at the time of trial was $65,000. Appellant argued that the trial court erred by including in the marital estate the increased value of the homestead because the present value of the homestead represents merely an increase in the value of appellant's nonmarital cash contribution of $12,000.

█ We summarily reject appellant's contention that the *entire* current market value of the homestead is attributable to his $12,000 cash contribution. Evidence at trial showed that improvements to the second homestead included a new furnace system, a new electrical system, a new water system, a new bathroom and kitchen, and insulation. These improvements cost $7,700. The sums expended for improvements are properly attributable to the parties' joint efforts and constitute marital property. *See* Minn.Stat. § 518.54, subd. 5 (1980) (presumption in favor of marital property); *Woosnam v. Woosnam,* 587 S.W.2d 262, 263 (Ky.App.1979).

█ Moreover, although a substantial portion of the appreciated value of the homestead is attributable to appellant's nonmarital contribution, *see Schmitz v. Schmitz,* 309 N.W.2d 748, 749 (Minn.1981), we note that the trial court offset its award of the homestead to respondent by awarding to appellant full interest in the rental property, which was marital property and was valued at $70,000. In light of the broad discretion accorded the district court in making a division of property, *see Bogen v. Bogen,* 261 N.W.2d 606, 609 (Minn.1977); *Peterson v. Peterson,* 308 Minn. 365, 368, 242 N.W.2d 103, 105–06 (1976), we believe appellant's challenge of the division of property in this case is without merit.

We have also considered appellant's argument that the trial court improperly invaded his nonmarital assets in making its property division and we find it unpersuasive. Minn.Stat. § 518.58 (1980) provides that if "either spouse's resources or property * * * are so inadequate as to work an unfair hardship, considering all relevant circumstances, the court may, in addition to the marital property, apportion up to one-half of the [nonmarital] property." The trial court did find that Nancy Faus "lacks sufficient property, including marital property apportioned to her, to provide for her reasonable needs, and is unable to adequately support herself after considering all relevant circumstances." While the trial court more properly should have made specific findings based on the relevant factors set out in the statute, *see id.,* it is quite apparent that the court did make a finding of

showing that the property is nonmarital property, which is defined as follows:

"Non-marital property" means property real or personal, acquired by either spouse before, during, or after the existence of their marriage, which

(a) is acquired as a gift, bequest, devise or inheritance made by a third party to one but not to the other spouse;

(b) *is acquired before the marriage*;

(c) *is acquired in exchange for or is the increase in value of property which is described in clauses (a), (b), (d), and (e)*;

(d) is acquired by a spouse after a decree of legal separation; or

(e) is excluded by a valid antenuptial contract.

Id. (emphasis added).

**6.** The trial court may apportion up to one-half of the nonmarital property to a spouse whose "resources or property, including his portion of the marital property as defined in section 518.-54, subdivision 5, are so inadequate as to work an unfair hardship, considering all relevant circumstances * * *." Minn.Stat. § 518.58 (1980). The statute also requires the court to make findings in support of such an apportionment based on all relevant factors, including those factors enumerated in the statute. *Id.*

unfair hardship. We therefore disagree with appellant's contention that the trial court could not award any of his nonmarital assets to respondent because there was no finding of unfair hardship.

3. We also find no merit in appellant's argument that the trial court abused its discretion by awarding to Nancy Faus "a sum which is equal to 50% of the value of 34 retirement units (out of a possible maximum 40 retirement units) presently $855.54 per month, subject to any increase or decrease thereon as may occur from time to time in the future." It was established at trial that the amount of the monthly pension that a Minneapolis fireman is entitled to upon retirement is stated in units. A unit has a value equal to ⅟₈₀th of the current monthly pay of a first-class firefighter. Because a first-class firefighter's rate of pay may fluctuate and because the value of a unit is determined at the date benefits are paid, the amount of the monthly benefit is subject to change. In short, when appellant's salary increases, the value of his pension per unit will increase. Appellant contends that tying the maintenance award to future increases or decreases in the value of the pension units is contrary to Minn.Stat. § 518.54, subd. 5 (1980), which defines "marital property" to include "vested pension benefits or rights, acquired by the parties * * * at any time *during the existence of the marriage relation* between them * * *." (emphasis added).

■■ We start with the premise that pension benefits are property to be considered by the court in exercising its discretion in a property division or award of maintenance. *Jensen v. Jensen*, 276 N.W.2d 68, 69 (Minn.1979); *Elliott v. Elliott*, 274 N.W.2d 75, 77 (Minn.1978). In those cases we expressly rejected the argument that pension benefits are future rights that are not available until a number of contingencies have occurred. Here the trial court did not award to respondent an interest in more than the 34 units that had already been earned "during the existence of the marriage relation." Moreover, the right to receive increases in the value of the

pension units was vested during the period of coverture because it was an already existing term of the pension plan. Therefore, we find that the trial court did not abuse its discretion in awarding to respondent increases in the value of the pension units. *See Hertz v. Hertz*, 304 Minn. 144, 229 N.W.2d 42 (1975).

■ 4. Appellant also challenges the award to respondent of $350 per month for maintenance as excessive and an abuse of discretion. Under the terms of the decree, maintenance terminates upon respondent's remarriage, appellant's retirement from the fire department, or upon court order. Respondent will continue to receive payments upon appellant's retirement, but these payments are actually in recognition of her interest in appellant's pension benefits.

The facts support the trial court's maintenance award. Her monthly expenses total about $1,200 and her monthly take home pay is $495. She is a high school graduate and is holding a low skill, low paying job. She was out of the job market for 20 years while she focused her efforts on maintaining the home and raising the children. Minn.Stat. § 518.552, subd. 1 (1980), provides that the court may grant maintenance if it finds that the spouse lacks sufficient property to provide for her reasonable needs and is unable adequately to support herself. The trial court made such a finding and, in light of all the relevant circumstances, it cannot be said that the amount of the award constitutes an abuse of discretion.

The judgment of the lower court is affirmed as modified. Respondent is allowed $400 attorneys fees for this appeal.