In re the Marriage of Rita V. TAYLOR,
petitioner, Appellant,

v.

Russell C. TAYLOR, Respondent.

No. CO–82–472.

Supreme Court of Minnesota.

Feb. 4, 1983.

Katz & Lange and Todd R. Haugan, Minneapolis, for appellant.

Russell C. Taylor, pro se.

SCOTT, Justice.

This appeal arises from a proceeding for the dissolution of a marriage. Appellant Rita Taylor seeks modification of the property disposition and an award of spousal maintenance. We affirm in part and reverse in part.

Rita Taylor commenced this action for dissolution in October 1980. The parties were married on December 27, 1947, and lived together as husband and wife until November 1980. Their marriage was dissolved in November 1981, when Russell was 56 and Rita 53 years of age. The parties have five children, the youngest of whom was a 17-year-old minor at the time of trial.

Rita Taylor is a high school graduate. She did not work outside the home for the first 20 years of the marriage. In 1967 she began part-time night work as an admitting clerk at a hospital. She assumed full-time status at the hospital in 1979, two years before the trial. She has had no other outside employment since 1967, and typing was the only skill involved in her job at the time of trial. She had worked temporarily in a supervisory capacity at the hospital for which she received an additional 40 cents per hour, but voluntarily left the supervisory position because she considered it too strenuous.

At the time of trial Rita's monthly net income was $843.68. In addition, she receives pay for about an hour and a half of overtime during a typical two-week pay period. She introduced at trial a list of monthly living expenses totaling $1,489.12. There was testimony that some of her listed expenses were overstated, or were attributable, in part, to her 17-year-old daughter, Gena. The testimony indicated that Rita's monthly expenses would be approximately $1,100 when Gena left for college.

Russell Taylor had been employed by Northwestern Bell for 34 years, and was a systems technician at the time of trial. He has had no other employment. His monthly expenses, not including $346 per month in payments he had been making to Rita since January 1981, were $1,110.

The trial court made no findings on Russell's net income. Rita asserts that Russell's net income is $1,450.77 per month. Russell claims his net monthly income is $1,340.00. For purposes of this appeal it is assumed that the trial court accepted the lower of the two estimates, $1,340.00.

The parties owned miscellaneous personal property, which was valued and distributed by the trial judge. The court's disposition of these items is not challenged on appeal. The parties owned a home, which they had lived in for 23 years, which Rita valued at $60,000 and Russell at $70,000. A mortgage of $3,000–$4,000 remained to be paid on the home. Rita had been living in the home since Russell left and had been making the $131.07 monthly mortgage payments.

Of significance on this appeal are the pensions of the parties. Rita had a pension or retirement plan at the hospital which would pay her $36.11 per month at age 65 were she to have quit work at the time of trial. Although there was no testimony either way, the fact that Rita listed no retirement deductions anywhere indicates that hers was probably a non-contributory plan.

The only fact in the record relative to Russell's pension plan is the following stipulation: If Russell were to have left his job at Northwestern Bell on the day of trial and retire, he would be entitled to receive for life a monthly pension in the amount of $826.15. Russell had no plans to retire at the time of trial and planned to continue to work as long as he could.

The dissolution hearing was held on October 27, 1981, in the Ramsey County District Court-Family Court Division. The district court dissolved the marriage; awarded maintenance to neither party, except that Rita was awarded as spousal maintenance one-half of Russell's pension benefits, accrued to date of trial, payable upon his retirement; determined that Russell and Rita have joint custody of their minor child, with Rita receiving physical custody subject to liberal visitation rights by Russell; awarded Rita $400 per month child support; ordered that three whole-life insurance policies be cashed and divided equally; and ordered that the homestead be sold when the minor child reaches 18 years of age and the proceeds divided equally. Appellant Rita V. Taylor raises the following issues on appeal:

(1) Whether the trial court made a "just and equitable disposition of marital property" as required under Minn.Stat. § 518.58 (1980).

(2) Whether it was an abuse of discretion for the trial court to deny an award of immediate spousal maintenance to appellant.

■ 1. In dissolution cases the district court is given broad discretion regarding the division of property, spousal maintenance and child support. *Bollenbach v. Bollenbach,* 285 Minn. 418, 175 N.W.2d 148 (1970). A decision of the district court for the distribution of property will only be overturned on a showing that it has abused its discretion. *Bogen v. Bogen,* 261 N.W.2d 606 (Minn.1977).

A. The trial court concluded that Rita was entitled to receive one-half of Russell's accrued pension benefits when he actually began to receive them, less the amount she is then receiving from social security and less her own monthly pension benefits of $36.11. The court characterized the share of Russell's pension benefits which Rita will receive as *spousal maintenance* and declared that in no event should spousal maintenance be less than $200.00 per month.

The parties stipulated that if Russell had retired at the time of trial, he would have been entitled to receive a monthly pension of $826.15 for life. He is not, however, entitled to receive any pension benefits until he does retire. Russell is now 57 years old, and plans to continue to work as long as he can.

■ Rita contends that the pension rights are a marital asset and that her share should not be characterized as spousal maintenance. Vested pension benefits or rights are a marital asset. Minn.Stat. § 518.54, subd. 5 (1980).[1] This court has

---

1. Minn.Stat. § 518.54, subd. 5 (1980), provides in relevant part:

   "Marital property" means property, real or personal, *including vested pension benefits or rights,* acquired by the parties, or either of them, to a dissolution, legal separation, or annulment proceeding at any time during the existence of the marriage relation between them, or at any time during which the parties were living together as husband and wife

held, however, that pension benefits are property to be considered by the trial court in exercising its discretion in a property division *or award of maintenance. Faus v. Faus,* 319 N.W.2d 408, 413 (Minn.1982); *Jensen v. Jensen,* 276 N.W.2d 68, 69 (Minn. 1979); *Elliott v. Elliott,* 274 N.W.2d 75, 77 (Minn.1978). In fact, in *Faus* this court upheld a trial court order which awarded the wife a 50% share of her husband's pension benefits, and characterized the payments as spousal maintenance. There is, therefore, authority for the trial court to order that spousal maintenance be paid to Rita from Russell's future pension benefits.

■ Minn.Stat. § 518.58 (1980),[2] however, requires that the trial court make "a just and equitable disposition of marital property." We find that the trial court's treatment of Russell's pension rights as a source for the future payment of spousal maintenance is not "just and equitable" because it has the effect of awarding him all his pension benefits if Rita remarries or if either she or Russell dies before Russell actually begins to receive the payments.[3] The trial court's division of marital assets in this case reflects its intention to divide the assets equally between the parties. Russell's pension benefits are a significant asset which, if awarded entirely to him, would result in Russell's receiving far in excess of one-half of the marital assets. This would not be a just and equitable division of marital property where the parties have been married for 34 years, the first 20 of which the wife spent as a full-time homemaker; the wife has no real vocational skills, having worked only as an admitting clerk in a hospital; and she has few other assets.

Appellant suggested that she be awarded the homestead and respondent his entire pension benefits. This would work an undue hardship on Russell. A more equitable alternative is to characterize the pension benefits as a marital asset to be split between the parties at the time Russell receives them, rather than as spousal maintenance.

B. The trial court ordered that Rita receive one-half of the monthly amount of Russell's pension benefits "at such time as respondent is actually receiving his pension." Rita contends that it is not "just and equitable" under Minn.Stat. § 518.58 (1980) to deny her a share of the pension benefits until Russell retires.

■ The valuation and division of pension rights is generally a matter for the trial court's discretion. *See Faus v. Faus, supra; Jensen v. Jensen, supra.* In deciding whether retirement benefits should be divided at the time of dissolution or upon future receipt by the employee spouse, the trial court should consider the advantages and disadvantages of each method in light of the facts of the particular case before it.

■ Division of retirement benefits at the time of divorce has the obvious advantage of avoiding the continuing jurisdiction of the court in order to insure that the appropriate payments are made to the non-employee spouse upon receipt of pension benefits by the employee spouse. This method is preferred where there are sufficient assets available at the time of divorce to divide the present value of the retirement benefits without causing an undue hardship to either spouse and where testi-

---

under a purported marriage relationship which is annulled in an annulment proceeding.
(Emphasis added.)

2. Minn.Stat. § 518.58 (1980) provides, in relevant part:
    Upon a dissolution of a marriage, an annulment, or in a proceeding for disposition of property following a dissolution of marriage by a court which lacked personal jurisdiction over the absent spouse or lacked jurisdiction to dispose of the property and which has since acquired jurisdiction, *the court shall*

*make a just and equitable disposition of the marital property* of the parties without regard to marital misconduct, after making findings regarding the disposition of the property.
(Emphasis added.)

3. Minn.Stat. § 518.64, subd. 3 (1980), provides:
    Unless otherwise agreed in writing or expressly provided in the decree, the obligation to pay future maintenance is terminated upon the death of either party or the remarriage of the party receiving maintenance.

mony on valuation is not unduly speculative.

A second method requires the determination of a fixed percentage for the non-employee spouse of any future payments the employee receives under the plan, payable when paid to the employee. This method, chosen by the trial judge in the instant case, has the advantage of making it unnecessary to determine the present value of the pension fund. The fixed percentage method should be used where present value determinations are unacceptably speculative or there are not enough assets to equitably require that benefits due in the future be split presently. *See Holbrook v. Holbrook,* 103 Wis.2d 327, 309 N.W.2d 343 (Wis.App. 1981).

■ In the instant case the trial court decided on the second method of dividing pension benefits. We find that it was within its discretion to do so. The court could reasonably have concluded that to award the house to Rita and the full pension benefits to Russell, as was suggested by appellant, would have caused undue hardship to Russell. The only assets of the marriage immediately available to Russell other than the proceeds of the house are a few personal possessions, a few pieces of furniture and approximately $2,000 as his share of the present cash value of three whole life insurance policies. Sale of the house, on the other hand, will provide each of the parties with approximately $30,000 with which to start a new life.

This court has touched upon the question of how to divide pension benefits between spouses at least twice before. In *Jensen v. Jensen, supra,* we upheld a trial court order which found the present value of the husband's pension benefits to be $32,539.71 and awarded the entire benefits to the husband as part of the disposition of marital assets. In *Faus v. Faus, supra,* we upheld a trial court order awarding the wife one-half of her husband's retirement benefits, payable upon the husband's retirement from the Minneapolis Fire Department and receipt of his monthly pension. The payments to the wife were characterized by the trial court as spousal maintenance; however, unlike the present case, payment of her share of the marital asset was deemed to survive her remarriage. Based upon our decision in *Faus* and the broad discretion given to the trial court in these matters generally, it was not an abuse of discretion for the trial court to postpone Rita's receipt of pension benefits until Russell's retirement.

C. The trial court ordered that Rita's receipt of one-half of Russell's pension benefits as spousal maintenance be reduced by "the monthly amount that she is then receiving by reason of social security" and "any monthly pension benefits earned by her." Rita contends that a reduction in the maintenance award due to the future receipt of social security payments is contrary to Minn.Stat. § 518.54, subd. 5, because it would have the effect of transferring to Russell the benefit of property acquired subsequent to the dissolution of their marriage. Such property is not marital property as defined by section 518.54, subd. 5.

■ In determining a just amount for *spousal maintenance,* we are directed by Minn.Stat. § 518.552, subd. 2 (1980), to consider all relevant factors, including:

> (a) The financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently * *.

Future receipt of social security payments is a financial resource and must be considered in determining spousal maintenance. In *Elliott v. Elliott, supra,* this court indicated it was proper for the trial court to consider social security benefits as future income in arriving at an award of alimony. In *Elliott,* we held it proper to consider pension benefits as property rights and social security benefits as future income. While it is appropriate to consider future income in determining an award of *spousal maintenance,* it is not just or equitable under the facts of this case to reduce Rita's share of *marital assets* by her future social security income. Furthermore, fairness requires that Rita's receipt of one-half the value of Russell's pension benefits accrued at the time of trial be reduced by only *one-half* of her monthly pension bene-

fits accrued at the time of trial when she begins to receive them.

■ 2. The trial court did not find that appellant lacked sufficient property to provide for her reasonable needs and was unable to support herself as is required by Minn.Stat. § 518.552, subd. 1,[4] in order to grant maintenance. Rita contends that because her net monthly income is approximately $843 and her monthly expenses are approximately $1,100, she lacks sufficient property to meet her needs. Russell, on the other hand, has a net monthly income of approximately $1,340 and expenses of approximately $1,110 per month. Rita claims that this relative disparity in the financial circumstances of the two parties will be increased dramatically when the house is sold and her budget will include a much larger housing expense. She is currently spending only $131.07 per month for principal, interest, taxes and insurance.

Respondent described the manner in which he felt the marital assets should be distributed and what he felt would be an equitable award of spousal maintenance in a post-trial letter to the district court. Respondent recommended the following:

1. An equal division of personal property.
2. Sale of the house and an equal division of the proceeds.
3. Use of his pension to fund *life-long* spousal maintenance for Rita.

In the letter respondent also stated that "[l]ong-term spousal maintenance should be adequate to meet petitioner's needs, but not excessive" and that "[i]t would thus appear that a maximum of $200 per month spousal maintenance, once Gena reaches age 18, would be more than enough to supplement petitioner's income." These comments are a clear indication that Russell felt some spousal maintenance payments were warranted and fully expected that such an award would be made by the district court.

This court recently considered the adequacy of an award of spousal maintenance in *Erlandson v. Erlandson,* 318 N.W.2d 36 (Minn.1982). In *Erlandson* the court noted that although Minn.Stat. § 518.552, subd. 2 (1980),[5] lists seven factors for determining the type and amount of maintenance, the issue is basically the financial needs of the parties and their ability to meet those needs. Appellant lacks sufficient property to provide for her reasonable needs. In

4. Minn.Stat. § 518.552, subd. 1 (1980), provides:

In a proceeding for dissolution of marriage or legal separation, or in a proceeding for maintenance following dissolution of the marriage by a court which lacked personal jurisdiction over the absent spouse and which has since acquired jurisdiction, the court may grant a maintenance order for either spouse if it finds that the spouse seeking maintenance:

(a) Lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs, especially during a period of training or education, and

(b) Is unable to adequately support himself after considering all relevant circumstances through appropriate employment or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home.

5. Minn.Stat. § 518.552, subd. 2 (1980), provides:

The maintenance order shall be in amounts and for periods of time as the court deems just, without regard to marital misconduct,

and after considering all relevant factors including:

(a) The financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian;

(b) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;

(c) The standard of living established during the marriage;

(d) The duration of the marriage;

(e) The age, and the physical and emotional condition of the spouse seeking maintenance; and

(f) The ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance; and

(g) The contribution of each party in the acquisition, preservation, depreciation, or appreciation in the amount or value of the marital property, as well as the contribution of a spouse as a homemaker.

view of the above comparison of the financial circumstances of the parties in this case and respondent's concession below that some spousal maintenance is warranted, it was an abuse of discretion to make no immediate award of spousal maintenance.

Accordingly, the judgment and decree of the district court are modified as follows: First, appellant is awarded spousal maintenance in the amount of $200 per month continuing until appellant remarries, respondent retires from Northwestern Bell, either party dies, or until further court order under Minn.Stat. § 518.64. Second, respondent's pension rights accrued to the date of trial are considered a marital asset. Appellant shall be paid one-half of the value of respondent's pension benefits accrued to the date of trial when respondent begins to receive them, less one-half the value of her own pension rights accrued to date of trial when she begins to receive them. No deduction shall be made for social security income received by appellant.

Affirmed in part, reversed in part.