**In re the Marriage of Marilyn Jeanne OBERLE, Petitioner, Respondent,**

**v.**

**Robert Charles OBERLE, Appellant.**

**No. C1–84–114.**

Court of Appeals of Minnesota.

Sept. 25, 1984.

Thomas E. Dougherty, Dougherty & Scott, Fairmont, for respondent.

Daniel M. McDonald, Johnson, Berens & Wilson, Fairmont, for appellant.

Considered and decided by HUSPENI, P.J., and NIERENGARTEN and RANDALL, JJ., with oral argument waived.

## OPINION

RANDALL, Judge.

In this marriage dissolution, the husband appeals the trial court's property division, including the method of dividing the parties' pension interests. We reverse and remand for a redetermination and redivision of the parties' assets.

## FACTS

Robert and Marilyn Oberle were married in 1951, and had five children, all of whom are now adults. Marilyn, now age 51, worked exclusively as a homemaker until 1966, when she began working as a bank teller. In 1982 she earned a gross income of $10,233.00. She is in good health and is likely to remain employed. Even while employed full-time as a bank teller, Marilyn performed most or all of the household and child-rearing chores. Robert, also 51, had worked at various jobs throughout the marriage, but is currently unemployed, having been fired from his most recent job. Dur-

ing most of the marriage he also worked part-time in the Fairmont Fire Department. His gross income in 1982 was $19,049.00. Robert suffers from alcoholism and has other severe medical problems which are not terminal or totally disabling. He has undergone a tracheostomy and a laryngectomy, and as a result his voice is synthesized through a voice box. The trial court found that Robert still is capable of earning a substantial income.

The parties purchased a home in 1956. Its current market value is $54,500.00, subject to encumbrances of $16,691.67. Subtracting estimated selling costs of $3,515.22, the parties' net equity is $34,293.11. Since 1966, when the mortgagee began foreclosure proceedings on the home, the parties have kept separate checking accounts and Marilyn has made the house payments from her account. The parties own miscellaneous items of personal property worth approximately $6,000.00, two cars, each worth approximately $3,200.00, and bank accounts, savings bonds, and an Individual Retirement Account totalling $2,645.04. They have debts of $2,438.00. Marilyn has a vested interest in the profit-sharing plan of her employer in the amount of $8,442.13. She also has a non-vested interest in the pension plan of her employer, which, if she continues employment with the bank to age 65, will pay her approximately $142.00 monthly for the rest of her life. The present value of her interest is $3,337.46. The trial court, however, used a value of $1,500.00 in its calculations, giving as a reason the benefit's contingency upon Marilyn's continued employment. Robert owns an interest in the Fairmont Fire Department Pension Plan, from which he is receiving, and will continue to receive until his death, $210.00 per month. The present value of that interest is $25,393.00. Robert is also the owner of a deferred annuity with Prudential Life Insurance Co., which will pay Robert $23.38 per month beginning at age 55. The present value of the annuity is $3,887.00.

The trial court found that Marilyn's contributions to the acquisition and preserva-

tion of marital property had been greater than Robert's, equalling 65% to Robert's 35%. Even considering Robert's poor health, poor employability, and greater needs, the trial court awarded the homestead to Marilyn in its entirety, along with other property for a total value of $53,186.00 ($55,023.46 if the undiscounted present value of Marilyn's pension is used), and awarded Robert his fire department pension plus other property for a total of $34,924.00. The court ordered that Marilyn be responsible for the mortgage and all debts except Robert's medical bills, which total $1,407.00.

## ISSUE

Did the trial court err in its division of the parties' marital property?

## ANALYSIS

### Property Division

Under Minn.Stat. § 518.58 (1982), the court must make "a just and equitable division of the marital property of the parties without regard to marital misconduct." The court must base its findings supporting the division upon

all relevant factors, including the length of the marriage, any prior marriage of a party, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, needs, opportunity for future acquisition of capital assets, and income of each party. The court shall also consider the contributions of each in the acquisition, preservation, depreciation or appreciation in the amount or value of the marital property, as well as the contribution of a spouse as a homemaker.

Minn.Stat. § 518.58.

In considering the relevant factors, the court found that Robert's health was worse than Marilyn's, that his employability was not as good, and that his needs were greater than Marilyn's. The court also found, however, that Robert had a greater income potential than Marilyn, and that this greater income potential more than offset his

greater needs. The court determined that Robert's income potential was more than twice Marilyn's despite his alcoholism and other disabilities because in the past he had earned about twice what Marilyn earned. The court also found that, despite Robert's higher income and second job as a firefighter throughout the marriage, Marilyn's contribution to the acquisition and preservation of the marital estate was double that of Robert, since she had been employed full-time since 1966 and had also fulfilled the roles of homemaker and mother.

A trial court has broad discretion in the division of marital property. *Bogen v. Bogen*, 261 N.W.2d 606 (Minn.1977). Nonetheless, the overriding requirement of the statute governing the division of marital property is that the division be equitable. We find, given Robert's unemployment, Robert's medical problems, and the relatively equal contributions of the parties to the marriage, that the 62%—38% division of the marital estate was inequitable. It is undisputed that Robert's needs are greater, and that the division of property has left him, for the time being, with only his $210.00 per month pension to live on. Despite the court's finding that Robert has a high income potential, he remains unemployed. Whether his termination from his most recent job was his fault or not, it is unlikely that many employers would be willing to hire someone of Robert's age who suffers from the medical problems and partial disabilities Robert has. Thus, to rely upon his high income potential as a basis for giving him less marital property is unfair. A more equal division of the marital estate is warranted in this case, with the property divided so that Robert has access to his share.

Marilyn claims our recent decision of *Stassen v. Stassen*, 351 N.W.2d 20 (Minn. Ct.App.1984), is controlling. As the Supreme Court has stated, however, property division in "[e]ach case must be considered in light of its own particular facts." *Krohn v. Krohn*, 284 Minn. 95, 98, 169 N.W.2d 389, 391 (1969). Further, in *Stas-*

*sen,* we upheld a 75%—25% division of marital property on the grounds that the husband had, throughout the almost fifty year marriage, contributed little or nothing to the marital estate, either in the way of income or household labor. The unequal division in *Stassen* also left each party with a home and a piece of income-producing property. Here, however, both parties worked steadily throughout the marriage, and the unequal division has resulted in Robert having no home and no property from which he could derive an income or which could provide him with ready cash for living expenses. *Stassen* is factually distinguishable, and therefore is not controlling.

### Pension Interests

Under Minn.Stat. § 518.54, subd. 5 (1982), interests in pension plans are marital property to be divided upon dissolution of the marriage. The valuation and division of pension rights is generally a matter for the trial court's discretion. *DuBois v. DuBois,* 335 N.W.2d 503 (Minn.1983). Where the trial court's treatment of pension rights results in a division of property which is not "just and equitable," however, it must be reversed. *Id.* at 798.

Here, the parties' two largest assets are their home and Robert's fire department pension. Rather than award half of each to each party, the trial court awarded the home entirely to Marilyn and the pension rights entirely to Robert. It did so by using a "present value determination;" that is, determining the present value of the pension benefits at the time of dissolution, awarding the pension rights to Robert, and awarding property of comparable value (the house) to Marilyn. *See Taylor v. Taylor,* 329 N.W.2d 795 (Minn.1983). According to the Supreme Court in *Taylor,* the method used by the trial court

> is preferred where there are sufficient assets available at the time of divorce to divide the present value of the retirement benefits without causing an undue hardship to either spouse and where testimony on valuation is not unduly speculative.

329 N.W.2d at 798. Another method suggested by the supreme court, the "fixed percentage method" or "reserved jurisdiction method," requires the court to reserve jurisdiction until the benefits are received and divide the actual monetary benefit if and when received. This method

> should be used where present value determinations are unacceptably speculative *or* there are not enough assets to equitably require that benefits due in the future be split presently.

329 N.W.2d at 799 (emphasis added). Because Robert is already receiving monthly pension payments, the present value the court assigned to the fire department pension is not "unacceptably speculative." However, there are insufficient assets available to enable Robert to give Marilyn part of the present value of his pension benefits without causing undue hardship to him. Thus, the fixed percentage method should have been used.

In *Taylor,* the Supreme Court found that awarding the homestead to the wife and the entire pension benefits to the husband, as the wife had suggested, would work an undue hardship on the husband where the only assets available to the husband other than the proceeds of the house were a few personal possessions, a few pieces of furniture and approximately $2,000. Here, Robert has even less than that. If the court found that the "present value determination" method would work an undue hardship upon Mr. Taylor, who had an income of $1340.00 per month, then it certainly works an undue hardship upon Robert, whose only income is a $210.00 per month pension. Dividing Robert's pension benefits as he receives them, and awarding half the proceeds of the house to Robert will provide each party with approximately $17,000.00 with which to start a new life. *See Taylor,* 329 N.W.2d at 799.

### DECISION

The trial court erred in dividing the parties' marital property and in valuing and dividing their pension rights.

Reversed and remanded.