**In re the Marriage of Sallee J. ROBIN-SON, petitioner, Respondent,**

v.

**Max B. ROBINSON, Appellant.**

**No. C7–83–2021.**

Court of Appeals of Minnesota.

Sept. 25, 1984.

Joseph W. Hautman, Speeter, Johnson, Hautman & Olson, Minneapolis, for respondent.

Louis M. Reidenberg, Reidenberg & Jaycox, Bloomington, for appellant.

Heard, considered and decided by LANSING, P.J., and WOZNIAK and FORSBERG, JJ.

## OPINION

FORSBERG, Judge.

This is an appeal by the husband from a judgment and decree of dissolution, raising issues concerning the valuation of the family business and the homestead, and the trial court's award of spousal maintenance. The family business is as a manufacturer's representative, dealing in product "lines," which appellant claims are not saleable. The trial court estimated the value of the business at $125,000. The wife is a real estate salesperson, who appellant claims is not entitled to maintenance due to her ability to support herself. We affirm.

## FACTS

Max and Sallee Robinson were married in 1963. There are two children of the marriage, one emancipated, and the other to reach the age of 18 in March, 1985. Child support was ordered for this child in the amount of $600 per month until that date, or until her graduation from high school.

Sallee Robinson worked principally as a homemaker during the marriage. She also held a number of part-time, non-career positions at low wages, and worked for the family business periodically. Sallee began a career as a real estate salesperson in

1980. The court found that she had a capacity to earn between $15,000 and $20,000 per year. She was thirty-nine years of age at the time of trial.

Max Robinson, after holding positions in sales and management, began a business as an independent manufacturer's representative in 1976. He testified that the business, Max Robinson & Associates, could not be sold for more than the value of its physical assets, which were limited to office furniture and product samples. The product samples he estimated to be worth $10,000; he gave no dollar estimate of the value of the business.

Max presented the expert testimony of two manufacturer's representatives, who stated that the product lines could not be sold, due to the vendor's power to cancel at any time. The nature of the business was summarized by one as follows:

"Well, I don't know that the lines are for sale, per se.

When a representative strikes an agreement with a vendor, its an arrangement between those two people and if the vendor wishes to make arrangements with other people, they can certainly let that representative go and rehire somebody but there's really nothing to sell in an agency.

You're selling your stationery and your file cabinets. There is [sic] really no lines for sale."

Sallee testified that the business began with "virtually no" product lines, and had picked up business by making two purchases of groups of product lines from other representatives. The purchase price of these lines, she testified, was determined on the basis of one year's gross commissions, a formula which she said Max had told her was the basis on which their business could be sold.

The business employed three salesmen, besides Max Robinson himself. One of these, Ron Hendrickson, had been working for Max for over five years. Max Robinson testified that Ron would be "quite capable" of taking over the product lines, and

that "[h]e probably has better contact with the factories than I do."

Max testified that he was valuable to the company because of his sales ability, but if he died, "[t]he other fellows that are there will continue to do the same." He characterized the business as "a loose organization of salesmen." Sallee testified that the salesmen were paid a salary plus bonus. Max had earned $56,479 from the business in 1982, and $49,913 in 1981. Gross commissions for the most recent year were $234,760.

The trial court found that some of the product lines of Max Robinson and Associates had been purchased from other manufacturer's representatives, at a sales price equal to one year's gross commissions. It found that such contracts could be terminated by either party with 30 days' notice. A reasonable estimate of the value of the business was found to be $125,000.

The trial court valued the homestead at $190,000, less a mortgage encumbrance of $76,500. Sallee Robinson valued the homestead at $170,000 at trial, although she had estimated $179,000 prior to trial. An appraisal by an appraiser approved by both parties put the sale price at about $210,000.

Sallee Robinson estimated her monthly living expenses to be $1,756 in the pre-hearing statement. At trial she presented a statement of expenses estimated at $1,935, and stated on cross-examination that her expenses were around $2000 per month. The difference she attributed to the need to purchase medical insurance and life insurance, and an increase in utility bills. The trial court found her monthly expenses to be $2,000, and awarded spousal maintenance in the amount of $300 per month for five years.

**ISSUES**

1. Did the trial court abuse its discretion in its valuation of the family business?

2. Did the trial court abuse its discretion in awarding spousal maintenance to the respondent?

3. Was there substantial evidence to support the trial court's findings as to valuation of the homestead and household goods, and of existing liabilities?

## ANALYSIS

### 1. Valuation of the family business

Appellant argues that the trial court's $125,000 valuation was contrary to the evidence presented showing that the manufacturer's lines were not marketable. Appellant also contends that the trial court's valuation represented a capitalization of his personal future earning capacity, contrary to the holding in *Rogers v. Rogers*, 296 N.W.2d 849 (Minn.1980), since he is the "key man" in the business.

It is clear that the trial court chose to disregard the expert testimony, as well as appellant's own testimony, that there are no marketable assets in a manufacturer's representative's business other than the physical assets. This testimony was clearly contradicted by appellant's purchase of sales "lines" from two other representatives. The trial court itself questioned one of the expert witnesses concerning this contradiction, and elicited an admission that one of the transactions was a "gift." The credibility of this testimony was for the trial court to determine. *Estate of Serbus v. Serbus*, 324 N.W.2d 381, 385 (Minn.1982).

■ There was sufficient evidence at trial for the court to conclude that, despite the contractual 30 days' termination provisions, there was something marketable in the business other than the physical assets. Whether these were characterized as sales of "lines," or groups of "lines," or as covenants not to compete, there was some marketable intangible asset in the business. In addition, appellant's emphasis on the highly personal nature of these agreements is somewhat offset by his admission that one of his salesmen is "quite capable" of taking over the lines. The business is clearly marketable to this particular salesman at a price beyond the value of its physical assets.

■ Appellant contends that the court's valuation represents a capitalization of his future earning capacity and is impermissible following *Rogers v. Rogers*, 296 N.W.2d 849 (Minn.1980). *Rogers*, however, does not reject the capitalization of earnings approach to valuation of a small business, which is a primary method of valuation. *See Introduction to Financial Statement Analysis and Business Valuation*, Minn. CLE 104 (1983).

In *Rogers*, the CPA appraising the closely held corporation used three methods of valuation, all based on the capitalization of earnings. The first two methods assumed a sale of the business and capitalized earnings to arrive at a sale price, but did so while adding back the salaries of the officers. The third method assumed no resale due to the "key man" role of the husband, and simply capitalized the husband's salary and share of earnings. The Court held that these valuations were flawed because the appraiser "did not exclude that portion of appellant's annual income that represents reasonable compensation for his services." *Rogers*, 296 N.W.2d at 853.

Here there is no breakdown of Max Robinson's earnings from the business and his individual compensation. Max characterized the business as a "loose organization of salesmen," working independently of one another. His argument on appeal is that all of his earnings from the business are direct compensation for services rather than profits. Sallee, however, testified to discussions with Max about compensation for one of the salesmen, indicating that they were not each on a simple commission basis. Although there was a lack of direct evidence on the operations of the business, the trial court could have inferred from the circumstances of the business and the testimony of Sallee Robinson that some of appellant's earnings from the business arose from his ownership of it. The capitalization of these earnings would not result in an impermissible "lien" on his individual earning capacity. *See, Rogers*, 296 N.W.2d at 853.

The value proposed by appellant, $10,000 plus the value of the office furniture, was clearly inadequate. The trial court's valuation of $125,000 was a conservative figure, correctly based on a capitalization of earnings.

## 2. Spousal maintenance

The two basic requirements before a court may grant maintenance are that the spouse seeking maintenance:

"(a) Lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs, especially during a period of training or education, and

(b) Is unable to adequately support himself after considering all relevant circumstances through appropriate employment or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home."

Minn.Stat. § 518.552 subd. 1 (1980). In assessing the second requirement, the court generally compares monthly expenses to net take-home pay. *See, Erlandson v. Erlandson,* 318 N.W.2d 36, 39 (Minn.1982).

Sallee unquestionably did not receive sufficient income-producing property to provide for her needs. In addition, even her projected gross income of $15–20,000 a year was less than her expenses of $2,000 per month. The trial court did not abuse its discretion in awarding spousal maintenance to her.

The statute permits the court to award maintenance "if it finds" that the two basic requirements are met. Minn. Stat. § 518.552(1). The trial court did not expressly make these findings, but did make findings from which it could be concluded that the statutory requirements were met, which is sufficient. *See generally Erlandson v. Erlandson,* 318 N.W.2d 36 (Minn.1982).

## 3. Other issues

The trial court estimated the value of the homestead at $190,000, choosing a figure between the appraiser's estimate of $210,000, and Sallee's estimate of $170,000. Although Sallee Robinson was an interested party, her credibility, and the weight to be accorded her testimony, were for the trial court to determine. *Estate of Serbus v. Serbus,* 324 N.W.2d 381, 385 (Minn.1982). The trial court's valuation was well within a reasonable range of figures. *See, Hertz v. Hertz,* 304 Minn. 144, 145, 229 N.W.2d 42, 44 (Minn.1975).

Appellants challenge to the division of household goods cannot be considered, since the exhibits upon which he bases his claim are not in the record. It is appellant's responsibility to assure an adequate record is presented for review. *Custom Farm Services, Inc. v. Collins,* 306 Minn. 571, 572, 238 N.W.2d 608, 609 (1976).

Appellant claims that the trial court disregarded a tax refund received by respondent, as well as tax liabilities of over $8,000 which appellant owed. These are not listed in the court's findings, but would not significantly affect the overall distribution of the marital estate.

## DECISION

The trial court's valuation of the family business was within a reasonable range of figures and did not capitalize the earning capacity of the appellant. There was no abuse of discretion in the award of spousal maintenance; the other findings challenged by appellant were supported by substantial evidence.

Affirmed.