*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A24-0615**

In re the marriage of:

Lori Ann Saari, petitioner,
Respondent,

vs.

Mark Steven Saari,
Appellant.

**Filed November 10, 2025
Affirmed
Harris, Judge**

Carlton County District Court
File No. 09-FA-22-1593

Lori Ann Saari, Esko, Minnesota (pro se respondent)

Mark Steven Saari, Barnum, Minnesota (pro se appellant)

Considered and decided by Harris, Presiding Judge; Connolly, Judge; and Schmidt, Judge.

**NONPRECEDENTIAL OPINION**

**HARRIS**, Judge

In this marital dissolution appeal, appellant-husband Mark Steven Saari argues that the district court erred by (1) denying his motion to appoint an actuary to value his and respondent-wife Lori Ann Saari's pensions, (2) ordering him to refinance or assume the mortgage on the homestead within 180 days, (3) interfering with federal law, (4) making

findings of fact that were clearly erroneous, and (5) dividing certain marital property. We conclude that the district court did not abuse its discretion when it ordered an equity balancing payment and denied husband's motion to appoint an actuary. And because husband's remaining arguments are based on a misunderstanding of the district court's order or are not properly before us, we affirm.

**FACTS**

Husband and wife were married in September 1999. Husband and wife have two adult children and one minor child. The minor child is disabled. In August 2022, wife petitioned for dissolution of marriage. Husband was self-represented in the proceedings.

In June 2023, the district court issued its dissolution decree. The district court found that husband is disabled and receives social security disability benefits and derivative social security disability benefits for the minor child. Wife works a full-time job, and her gross monthly income is $3,810. Neither party requested an award of spousal maintenance.

The district court divided certain marital property, including husband and wife's assets and debts, pensions, their homestead in Minnesota, and their lake cabin in Wisconsin. The district court awarded husband the lake cabin. The district court required husband to pay an equity balancing payment in the amount of $74,376. Both parties agreed that the homestead would go to husband. In awarding the homestead to husband, the district court required him to "either refinance or solely assume the mortgage." And if husband failed to do either one within 180 days of judgment, the district court gave wife the authority to place the homestead on the market for sale. The district court added that the mortgage and costs would be paid from the proceeds of the sale, that wife would be

2

paid the amount of the equity balancing payment, and that husband would receive the remainder.

As for the pensions, the district court found that wife had an interest in two retirement accounts—the TD Ameritrade Roth IRA and the Northern Minnesota-Wisconsin Area Fringe Benefits Fund. It also found that husband had an interest in a pension with the Minnesota State Retirement System (MSRS) and that wife was listed as a 100% survivor on husband's MSRS disability retirement plan while he received disability payments. The district court awarded wife the TD Ameritrade Roth IRA "free and clear of any claim by [husband]," and awarded wife the Northern Minnesota-Wisconsin Area Fringe Benefits Fund pension, "subject to [husband's] marital interest, pursuant to a qualified domestic relations order (QDRO)." The district court awarded husband his MSRS pension, "subject to [wife's] marital interest, pursuant to a QDRO" and ordered husband to continue to list wife as a 100% survivor beneficiary while in disability or retirement status.

In August 2023, wife's counsel asked the district court to clarify two issues with its June 2023 order. First, counsel asked the district court to clarify that wife's pension would be "free and clear of any claim by [husband]," as the district court stated in its findings of fact and was expressly agreed to by both parties. Counsel pointed out that, in its conclusions of law, however, the district court stated, "[Wife] is awarded her pension . . . *subject to [husband's] marital interest*, pursuant to a [QDRO] to be issued separately." (Emphasis added). The balance sheet in the June 2023 dissolution judgment noted that wife's pension would be subject to one-half division by QDRO.

3

Second, wife's counsel asked the district court to clarify some "confusion" surrounding the equity balancing payment and the homestead. In awarding the homestead to husband in June 2023, the district court ordered that:

> Within one hundred eighty (180) days of the entry of the Judgment and Decree herein, [husband] shall either refinance or solely assume the mortgage with the [wife's] name removed.
> Should [husband] not refinance or solely assume the mortgage within 180 days of the entry of the Judgment and Decree herein, [wife] shall have the authority to place the home on the market for sale and [husband] shall cooperate with that process. Upon the sale of the homestead, the mortgage and any costs shall be paid from the proceeds. [Wife] shall then be paid the amount of the equity balancing payment set forth herein and [husband] shall receive the remainder of the proceeds. In the event that the proceeds of the sale of the home are not enough to pay [wife] the total equity balancing payment, [husband] shall pay [wife] the remainder of the equity balancing payment within 60 days.

Wife's counsel explained that the June 2023 order "specifically contemplates how [the equity balancing payment] is to be paid should the homestead be sold," but that it is "silent . . . on how [the equity balancing payment] is [to be] paid should the homestead NOT be sold." According to wife's counsel, "[t]his has led [husband] to believe that it only has to be paid should the homestead be sold." Wife's counsel therefore asked the district court to clarify that the "equity balancing payment from [husband] to [wife] is a binding, unconditional obligation, and that a reasonable payment deadline be set with consequences (presumably the sale of the homestead) for a failure to meet it."

4

Approximately two weeks later, the district court amended its order, clarifying first that "Wife is awarded her pension . . . free and clear of any claim by [husband]." The district court then clarified that:

> Within one hundred eighty (180) days of the entry of the Judgment and Decree herein, [husband] shall either refinance or solely assume the mortgage with the [wife's] name removed. *At such time as the mortgage is refinanced or solely assumed, the [husband] shall then have thirty (30) days, from the date of his refinancing or assumption of the mortgage, to pay [wife] the equity balancing payment set forth herein.*
> Should [husband] not refinance or solely assume the mortgage within 180 days of the entry of the Judgment and Decree herein, *and should he fail to pay [wife] the equity balancing payment within thirty (30) days of the refinancing or sole assumption of the mortgage*, [wife] shall have the authority to place the home on the market for sale and [husband] shall cooperate with that process. (Emphasis added).

Approximately one week after the district court issued its amended order, husband filed a "Notice of Claim," arguing that the district court "completely changed the original divorce order." Husband claimed that the amended order would leave him "homeless." He also remarked that he would bring a suit "against both employee and employer," would seek "damages in excess of a 100 million dollars," and "[f]or obvious reasons all motions and hearings will be in front of a jury."

In October 2023, husband filed a motion to dismiss and to quash wife's affidavit, filed a separate motion for a "court-ordered actuary and CPA," and a motion seeking "clarification of asset schedule." In November 2023, the district court denied husband's motions.

Husband appeals.

5

**DECISION**

**I.** **The district court did not abuse its discretion when it denied husband's motion to appoint an actuary in dividing marital property.**

Husband argues that the district court abused its discretion when it misvalued wife's pension "at a single monthly benefit payment." He claims that the district court violated Minnesota Statutes section 518.582 (2024), which provides the "procedure for valuing pension benefits or rights," by failing to appoint an actuary.

"A [district] court has broad discretion in evaluating and dividing property in a marital dissolution and will not be overturned except for abuse of discretion." *Antone v. Antone*, 645 N.W.2d 96, 100 (Minn. 2002). We "affirm the [district] court's division of property if it had an acceptable basis in fact and principle even though we might have taken a different approach." *Id.*

In the district court's order denying husband's request for an actuary, it emphasized that "the appointment of an actuary is discretionary with this Court." The district court also explained that the proper "time to request an actuary to value a pension would necessarily have been prior to the trial in this matter." And because the district court did not "reserve jurisdiction" to divide wife's pension, it concluded that it could not "now change the method used to divide the pension." Nevertheless, the district court addressed husband's arguments in the interest of judicial economy.

The district court distinguished the three methods of dividing a pension in its order. The first method uses the "present value" of the pension[1]—at the time of divorce—and is often preferred "where there are sufficient assets available at the time of the divorce to divide the present value of the retirement benefits without causing an undue hardship to either spouse." *Taylor v. Taylor*, 329 N.W.2d 795, 798 (Minn. 1983). The second method uses a "fixed percentage" to divide the pension. *Id.* at 799. Under this method, the district court must determine a "fixed percentage for the non-employee spouse of any future payments the employee receives under the plan," payable when the employee with the pension receives payments. *Id.* The final method of dividing the pension is through a QDRO, which is a "refined version of the fixed percentage method." *Fastner v. Fastner*, 427 N.W.2d 691, 698 (Minn. App. 1988). A QDRO is discretionary with the district court and may be appropriate when there is speculation surrounding the value of a pension. *Id.*

Here, the district court stated that "neither party submitted, through testimony or as an exhibit, the present value of [husband's] pension." Therefore, it concluded that a QDRO awarding both parties 50% of the marital value of husband's pension "was the only practical way to divide the pension." The district court did not abuse its discretion because it had no other way to divide the pension in an equitable manner. And, notably, husband

---

[1] In this context, we note that the term "present value" is a term of art. The "'[p]resent value' [of future payments] discounts an award [of funds to be received in the future] to that amount which, *if presently received*, could be invested in order to yield the future sum"; it is the amount "which a person would take *now* in return for giving up the right to receive an unknown number of monthly checks in the future." *DuBois v. DuBois*, 335 N.W.2d 503, 506 (Minn.1983) (alteration in original); *see Johnson v. Johnson*, 627 N.W.2d 359, 362 (Minn. App. 2001) (quoting these aspects of *DuBois*).

failed to provide the district court with evidence to support his claim. *See Eisenschenk v. Eisenschenk*, 668 N.W.2d 235, 243 (Minn. App. 2003) ("A party cannot complain about a district court's failure to rule in [the party's] favor when one of the reasons it did not do so is because that party failed to provide the district court with the evidence that would allow the district court to fully address the question."), *rev. denied* (Minn. Nov. 25, 2003).

In sum, we discern no abuse of discretion.

**II.    The district court did not abuse its discretion when it required husband to refinance or assume the mortgage on the homestead within 180 days of the decree because husband's argument is based on a misunderstanding of the district court's order.**

Next, husband argues that the district court abused its discretion when it required him to refinance or assume the mortgage on the homestead within 180 days of the decree. He also seems to argue that the district court's homestead determination gave "[wife] an uncounted asset" and allowed wife to "negotiate a sale."

Upon the dissolution of a marriage, the district court "shall make a just and equitable division of the marital property of the parties." Minn. Stat. § 518.58, subd. 1 (2024). District courts have "broad discretion" to evaluate marital assets and debts, and appellate courts will not overturn a district court's distribution absent an abuse of discretion. *Dahlberg v. Dahlberg*, 358 N.W.2d 76, 80 (Minn. App. 1984). "A district court abuses its discretion by making findings of fact that are unsupported by the evidence, misapplying the law, or delivering a decision that is against logic and the facts on record." *Woolsey v. Woolsey*, 975 N.W.2d 502, 506 (Minn. 2022) (quotation omitted). District courts are

"guided by equitable considerations in distributing rights and liabilities." *Kreidler v. Kreidler*, 348 N.W.2d 780, 784 (Minn. App. 1984).

In its order denying husband's motion, the district court explained that it required husband to refinance or solely assume the mortgage with the intention that husband could "obtain a new mortgage in an amount that would give him the ability to pay [wife] the equity balancing payment since the parties have a mortgage of approximately $191,000 on a home worth $324,000." The district court also clarified that in the event that husband could not refinance the home or solely assume the mortgage, that wife could receive her equity balancing payment by selling the home and that husband would receive the remaining proceeds.

The district court's conclusion contradicts husband's claim that if wife sold the home that he would have to also pay her the loan and the equity balancing payment. The district court's determination on the equity balancing payment as it relates to the homestead did not go against logic or the findings of facts. And given the district court's broad discretion, we conclude that it did not abuse its discretion.

## III. Husband's remaining arguments are procedurally barred.

Husband lastly argues that (1) the district court's order addressed the homestead mortgage in a manner that interferes with federal law, (2) the cabin "was settled years before the divorce" and that the district court's findings of fact regarding the cabin were clearly erroneous because wife "never had any ownership," (3) he should not have to pay the equity balancing payment because he named his wife as the beneficiary on his MSRS pension, (4) wife committed a crime by misreporting assets and deceiving him and the

9

court, and (5) the district court abused its discretion when it ordered an equity balancing payment. These arguments are not properly before us.

Generally, the appellant bears the burden of providing an adequate record. *Mesenbourg v. Mesenbourg*, 538 N.W.2d 489, 494 (Minn. App. 1995). The record must be "sufficient to show the alleged errors and all matters necessary for consideration of the questions presented." *Truesdale v. Friedman*, 127 N.W.2d 277, 279 (Minn. 1964). Moreover, the "party seeking review has a duty to see that the appellate court is presented with a record which is sufficient to show the alleged errors and all matters necessary to consider the questions presented." *State v. Carlson*, 161 N.W.2d 38, 40 (Minn. 1968). And "[w]hile an appellant acting pro se is usually accorded some leeway in attempting to comply with court rules, he is still not relieved of the burden of, at least, adequately communicating to the court what it is he wants accomplished and by whom." *Carpenter v. Woodvale, Inc.*, 400 N.W.2d 727, 729 (Minn. 1987) (citation omitted); *see Gruenhagen v. Larson*, 246 N.W.2d 565, 569 (Minn. 1976) (stating that a court will not modify ordinary rules and procedures because a pro se party lacks the skills and knowledge of an attorney).

Husband did not order transcripts from the divorce proceedings. By failing to order a transcript for this appeal, husband has not provided an adequate record for this court to review the district court's factual findings. *See Custom Farm Servs., Inc. v. Collins*, 238 N.W.2d 608, 609 (Minn. 1976) (stating that "[b]ecause of the absence of a transcript of the district court proceedings, we cannot consider" several errors that the appellants contend occurred, including "sufficiency of the evidence"). This court has also applied this rule in the context of a lack of exhibits. *See Robinson v. Robinson*, 355 N.W.2d 737,

741 (Minn. App. 1984) (stating appellant is responsible for providing an adequate record for appellate review and declining to consider his argument about the district court's division of goods because exhibits upon which appellant based his claim were not in the record) (citing *Collins*, 238 N.W.2d at 609), *rev. denied* (Minn. Jan. 4, 1985).

Husband's remaining arguments are not properly before this court. Husband failed to provide transcripts of the divorce proceedings, failed to provide exhibits upon which he bases his arguments, failed to raise any of the arguments before the district court, failed to adequately brief the issues, and failed to cite to the record or any authority to support his claims. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988) (stating that we generally will not consider matters not argued to and considered by the district court); *Annis v. Annis*, 84 N.W.2d 256, 261 (Minn. 1957) (stating that "litigants are bound [on appeal] by the theory or theories, however erroneous or improvident, upon which the action was actually tried below"); *Ganguli v. Univ. of Minnesota*, 512 N.W.2d 918, 919 n.1 (Minn. App. 1994) (declining to address allegations unsupported by legal analysis or citation).

**Affirmed.**