In re the Marriage of Audrey
C. JOHNSON, Petitioner,
Appellant,

v.

James V. JOHNSON, Respondent.

No. C0–00–1654.

Court of Appeals of Minnesota.

May 29, 2001.

Jeffrey D. Skonseng, Krekelberg Law Firm, Fergus Falls, MN, (for appellant).

Melinda Lee Hanson, McLarana, Hannaher & Skatvold, Moorhead, MN, (for respondent).

Considered and decided by WILLIS, Presiding Judge, AMUNDSON and HUSPENI, Judges.

## OPINION

DORIS O. HUSPENI, Judge *

On appeal from an order denying post-decree motions, appellant challenges the district court's rulings (1) allowing respondent to voluntarily reduce appellant's portion of respondent's pension benefits and (2) denying appellant attorney fees and costs. Because the district court did not err in clarifying the amended decree by stating it did not limit respondent's right to elect survivor annuity benefits and did not abuse its discretion by denying appellant's request for attorney fees, we affirm.

## FACTS

The 30–year marriage of appellant Audrey C. Johnson and respondent James Johnson was dissolved in 1982. Pursuant to the decree, marital assets were divided approximately equally. Respondent's pension from the U.S. Department of Agriculture was recognized in the decree as a marital asset. While the then-current surrender value of $20,113.36 was awarded to respondent, no division was made of the $159,518 sum found by the court to be the then-present value of the pension. Appellant was awarded temporary maintenance of $500 per month beginning January 1983, with a periodic reduction in that amount over time. Maintenance payments were to cease on December 31, 1992.

In December 1986, in response to a motion by appellant and after respondent's retirement, the district court provided for the division of pension benefit payments between the parties. The resulting amended decree provided that appellant was entitled to receive one-half of 30/34ths of respondent's pension benefit.[1] The amended decree was silent, however, on

respondent's right to elect survivor's benefits in the event of his remarriage.

In June 1990, respondent married a second time and elected survivor benefits under his pension for his new wife. He funded the survivor benefits in large part with a lump-sum payment, and in part with the pension annuity. However, because of his election of benefits, both parties' benefit payments were reduced from September 1992, when respondent filed for spousal benefits for his second wife, until August 1996, when he notified the Office of Personnel Management that his second wife had died. Thereafter, payments to both parties increased.

In February 1999, respondent married a third time. He again elected survivor benefits for his new wife. Due to changes in federal law, however, respondent was unable to fund even a portion of the election with a lump sum payment. The election was, therefore, funded entirely by the pension annuity, which again resulted in reduced payments to both parties.

In July 2000, the district court denied appellant's requests that (1) she receive one-half of 30/34ths of the monthly pension benefit *without* reduction for respondent's elections of survivor benefits for subsequent spouses; (2) she receive repayment of the lost amounts due to the election of survivor benefits; (3) respondent be required to fund by a lump-sum payment any survivor benefits he chose to elect; and (4) she be awarded attorney fees. The court reasoned that in the 1986 amended decree

> the court did not intend to hinder the respondent's right or ability to make elections in the administration of his pension. * * * [A]ppellant is entitled to

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

1. This percentage allocation recognized that respondent had continued his employment after dissolution of the marriage.

one-half of 30/34ths of the annuity payment after the respondent has made the elections available to him in the administration of his pension, and after the taxes have been paid.

This appeal followed.

## ISSUES

I. Did the trial court err by concluding that appellant shall receive one-half (½) of thirty/thirty-fourths (³⁰⁄₃₄) of respondent's pension payment *after* elections have been made?

II. Did the trial court abuse its discretion in denying appellant's request for attorney fees?

## ANALYSIS

### I.

■ A trial court is accorded broad discretion in regard to the division of property in dissolution actions. *Rutten v. Rutten*, 347 N.W.2d 47, 50 (Minn.1984). If the determination of the trial court is reasonable and finds an acceptable basis in fact and principle, the reviewing court will, and must, affirm. *Bollenbach v. Bollenbach*, 285 Minn. 418, 426, 175 N.W.2d 148, 154 (1970). If the trial court's property distribution is against logic and the facts on record, this court will find an abuse of discretion, and must reverse. *Rutten*, 347 N.W.2d at 50.

■ Pension division is generally discretionary with the trial court. *Faus v. Faus*, 319 N.W.2d 408, 413 (Minn.1982). When dividing retirement benefits, the trial court usually uses one of two methods. *DuBois v. DuBois*, 335 N.W.2d 503, 505 (Minn. 1983). The first, the "present cash value" method, treats the pension as an indivisible asset and awards it, including the right to all future pension benefits, to the employee spouse. In doing so, the value of the pension for property-division purposes

is set at its "present value" as of the date on which it is valued. In this context, we stress that "present value" is a term of art with a specific meaning. A " '[p]resent value' discounts an award [to be received in the future] to that amount which, *if presently received*, could be invested in order to yield the future sum"; it is the amount "which a person would take *now* in return for giving up the right to receive an unknown number of monthly checks in the future." *Id.* at 506 (alteration in original). Thus, if the "present cash value" method of dividing a pension is used, the pension is awarded to the employee spouse at its "present value" and the non-employee spouse is awarded non-pension property in an amount which, in light of the entire property distribution, is required to achieve the equitable property distribution mandated by Minn.Stat. § 518.58, subd. 1 (2000). Under the second method to divide a pension, the "reserved jurisdiction" method, the trial court divides the marital estate but reserves jurisdiction over the division of the pension until retirement and divides the actual monetary benefit at that time. *DuBois*, 335 N.W.2d at 505.

Here, neither party disputes that the trial court used the "reserved jurisdiction" method in dividing that portion of respondent's pension benefits. The amended decree issued in 1986 allocated the pension benefit payments between the parties according to an appropriate formula. But the decree was silent on respondent's right to elect survivor benefits for subsequent spouses.

■ Appellant argues that the July 2000 order of the district court was not merely a "clarification," but, in fact, impermissibly altered a final division of property ordered by the court previously, thereby violating provisions of Minn.Stat. § 518.64, subd. 2(e) (2000). That section provides:

All divisions of real and personal property * * * shall be *final,* and may be revoked or modified only where the Court finds the existence of conditions that justify reopening a Judgment under the laws of this State.

(Emphasis added.)

■ We disagree with appellant's categorization of the July 2000 order and conclude, instead, that the order appropriately clarifies the 1986 amended decree and represents a proper exercise of discretion.

[W]hile a trial court may not modify a final property division, it may issue orders to implement, enforce, or clarify the provisions of a decree, so long as it does not change the parties' substantive rights.

*Redmond v. Redmond,* 594 N.W.2d 272, 275 (Minn.App.1999) (citing *Potter v. Potter,* 471 N.W.2d 113, 114 (Minn.App.1991)).

The substantive rights of the parties remained unchanged after the July 2000 order. Appellant was entitled to receive one-half of 30/34ths of respondent's pension benefit each month. The language in the amended decree establishing that right does not restrict respondent's right to make subsequent pension elections. The amended decree was silent on that issue. While appellant could have requested in 1986 that the district court restrict respondent's right to elect survivor's benefits for future spouses, there is no indication in the record that such a request was made.

■ A trial court's construction of its own decree is given great weight on appeal. *Mikoda v. Mikoda,* 413 N.W.2d 238, 242 (Minn.App.1987), *review denied* (Minn. Dec. 22, 1987). Although three district court judges were involved in this matter through the years, "[T]he fact that the judgment was ordered by a predecessor does not limit action of a successor judge on the motion for clarification." *Id.* at 241.

The court in July 2000, in effect, noted the silence of the 1986 amended decree regarding future freedom afforded respondent in electing survivor's benefits for subsequent spouses. The court's declaration that the amended decree "did not intend to hinder" respondent's right to make elections is entitled to great deference.

The district court's July 2000 order clarifying the 1986 amended decree finds support in the federal regulations that address division of federal employee pension benefits pursuant to a marriage dissolution decree. The federal regulations support the proposition that appellant's share of respondent's gross annuity pension is to be awarded after reducing the annuity to provide survivor annuity benefits. *See* 5 C.F.R. §§ 838.103 (2000). The regulations require the court order to state the specific type of annuity to which the former spouse's share calculation should be applied. 5 C.F.R. §§ 838.306, subd. (a) (2000); *see also Pleasant v. Pleasant,* 97 Md.App. 711, 632 A.2d 202, 210 (1993). The three types of annuities specified by the regulations are: (1) gross annuity, (2) net annuity, and (3) self-only annuity. The gross annuity is defined as "the amount of monthly annuity payable after reducing the self-only annuity to provide survivor annuity benefits, if any, but before any other deduction." 5 C.F.R. §§ 838.103. A net annuity is the amount of monthly annuity payable after deducting for health benefits, life insurance, or income tax. *See id.* The self-only annuity is

the recurring unreduced payments under CSRS [Civil Service Retirement System] or FERS [Federal Employees Retirement System] to a retiree with no survivor annuity payable to anyone.

*Id.*

■ The regulations require the federal agency responsible for processing the court order to assume that the pensioner

retains the right to elect a survivor annuity absent specific restrictions stating otherwise.

> Unless the court order otherwise directs, OPM [Office of Personnel Management] will apply the formula, percentage, or fraction [used to determine the former spouse's share of the pensioner's annuity] to gross annuity.

5 C.F.R. § 838.306, subd. (b) (2000). Implicit in the federal regulations is the assumption that the former spouse's share of the pensioner's annuity is calculated after reduction for survivor annuity benefits. The regulations leave open the possibility that a state court decree of dissolution or divorce may specifically restrict a pensioner's right to elect survivor benefits for future spouses or may provide for calculation of the former spouse's share *before* reduction for survivor benefits. However, the state court must *explicitly* direct such a calculation. Here, it did not. There is no evidence in the record that appellant asked for such a direction in the court order, but she clearly could have.

Appellant also relies on the Minnesota Rules of General Practice to argue that respondent, when he remarried, accepted additional support obligations with full knowledge of his prior obligations under the dissolution decree. *See* Minn. R. Gen. Pract. 303.06(d) (2000) (spouse who remarries after dissolution accepts new obligations "with full knowledge of * * * prior obligations"). Appellant further argues that *Walker v. Walker*, 553 N.W.2d 90 (Minn.App.1996), is relevant and provides guidance in the present situation.

We find appellant's reliance on the general practice rule and on *Walker* to be misplaced. Both the rule and *Walker* address spousal maintenance obligations, which are not at issue in this case. Appellant's right to receive spousal maintenance ended on December 31, 1992. Here, re-

spondent did not seek to avoid a maintenance obligation because he had no such obligation Rather, he exercised his right to elect a survivor benefit for a subsequent spouse, thus reducing his share and appellant's share of each monthly pension benefit. After election of survivor's benefits, appellant continued to receive each month one-half of 30/34ths of respondent's pension benefit, consistent with the provisions of the 1986 amended decree.

## II.

Finally, appellant seeks review of the trial court's denial of her request for attorney fees.

Absent an abuse of discretion, this court will not disturb a trial court's decision denying an award attorney fees. *Whalen v. Whalen*, 594 N.W.2d 277, 282 (Minn.App.1999). An award of need-based attorney fees is proper when the court finds that (1) the fees are necessary for the good-faith assertion of the party's rights in the proceeding and will not contribute unnecessarily to the length and expense of the proceeding; (2) the party from whom fees, costs, and disbursements are sought has the means to pay them; and (3) the party to whom fees, costs, and disbursements are awarded does not have the means to pay them. Minn.Stat. § 518.14, subd. 1 (2000); *see id.*

Consideration of these factors in the present case leads us to conclude that the trial court did not abuse its discretion in denying appellant's request for fees.

Appellant argues additionally that she should be awarded attorney fees incurred on appeal. Minn. R. Civ.App. P. 139.06 dictates that a party seeking attorney fees on appeal "shall submit such a request by motion under [Minnesota] Rule [of Civil Appellate Practice] 127." *Id.* Appellant did not file such a motion. We,

therefore, decline to award attorney fees on appeal.

## DECISION

The trial court did not err by concluding that appellant should receive one-half ($\frac{1}{2}$) of thirty/thirty-fourths ($^{30}\!/_{34}$) of respondent's pension payment after his election of survivor benefits. The trial court did not abuse its discretion when it denied appellant's request for attorney fees. No attorney fees are awarded on appeal.

**Affirmed.**