# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A15-0163

In re the Marriage of:

James Allen Ertl, petitioner,
Appellant,

vs.

Diane Martha Ertl,
Respondent.

**Filed November 2, 2015**
**Reversed and remanded**
**Reilly, Judge**

Dakota County District Court
File No. 19AV-FA-11-491

Kay Nord Hunt, Lommen Abdo, P.A., Minneapolis, Minnesota; and

John R. Schulz, McGrann Shea Carnival Straughn & Lamb, Chartered, Minneapolis, Minnesota (for appellant)

Andrew V. Moran, Eagan, Minnesota (for respondent)

Considered and decided by Reilly, Presiding Judge; Schellhas, Judge; and Stoneburner, Judge.[*]

## S Y L L A B U S

1.      Parties' written agreement to limit division of property in marriage-dissolution action to husband's "retirement benefits" is narrowly construed and does not

---

[*]  Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

include a presumptive award of "disability benefits" unless clearly set out in the dissolution judgment.

2.  A district court deprives a litigant of due process of law by modifying a marriage-dissolution judgment and decree without providing litigant with notice or a meaningful opportunity to respond.

## O P I N I O N

**REILLY**, Judge

In this post-dissolution dispute regarding whether the husband's disability benefits are included in the parties' agreement to divide "retirement assets," appellant-husband James Allen Ertl (husband) challenges the district court's division of his disability benefits and the district court's award of additional funds from husband's retirement account to respondent-wife Diane Martha Ertl (wife). Because we determine that the district court erred both by ruling that "disability payments" are indistinguishable from "retirement assets," and by awarding additional funds to wife without affording husband notice and an opportunity to respond, we reverse and remand.

## FACTS

Husband and wife were married in August 1980 and separated in November 2010. In May 2011, the parties divorced pursuant to a stipulated judgment and decree (the Judgment). Husband and wife were each 53 years of age at the time of the Judgment. Husband was employed by Independent School District 196 (ISD 196) as a teacher at the time of the divorce. The Judgment divides husband's Teachers Retirement Association

2

(TRA) retirement benefits valued at $2,769 per month, and his Fidelity 403(b) account, valued at $151,679. The Judgment further provided:

> The parties have agreed to divide [husband's] TRA benefits as of December 31, 2010. It is the intent of the parties to exclude [husband's] "Rule of 90" benefits from the calculation of TRA benefits that are being awarded to [wife]. If [husband] is able to work continuously as a teacher and accumulate additional benefits that qualify him for the "Rule of 90" benefit payments, the parties have agreed to amend the Judgment and Decree and have the Court award and transfer to [wife] an additional $20,000 from [husband's] share of his Fidelity 403(b) divided account as additional property settlement to [wife].

The Judgment provides for division of the retirement accounts as follows:

> [Husband's] Ameriprise TSA account shall be divided between the parties. From this account, [wife] is awarded one-half of balance, plus any earnings on the amount, less any losses on the amount, from December 31, 2010 to the date of distribution or rollover to [wife]. . . . Each party shall receive his or her interest pursuant to a Qualified Domestic Relations Order[.]

> [Husband's] Fidelity 403(b) account shall be divided between the parties. From this account, [wife] is awarded $20,000, plus any earnings on the amount, less any losses on the amount, from December 31, 2010 to the date of distribution or rollover to [wife]. Thereafter, [wife] is awarded one-half of the remaining balance as of December 31, 2010, plus any earnings on the amount, less any losses on the amount, from December 31, 2010 to the date of distribution or rollover to [wife]. . . . Each party shall receive his or her interest pursuant to a Qualified Domestic Relations Order[.]

> If [husband] is able to work continuously as a teacher and accumulate additional benefits that qualify him for the "Rule of 90" benefit payments, the Judgment and Decree shall be amended and the Court shall award and transfer to [wife] an additional $20,000 from [husband's] share of [his] Fidelity

403(b) divided account as additional property settlement to [wife] . . . .

[Husband's] TRA retirement benefits shall be divided between the parties. [Wife] is awarded a fifty percent (50%) interest in these benefits determined as of December 31, 2010, deferred; [wife's] award of benefits shall include cost of living or other increases on her portion of the benefits awarded . . . . Each party shall receive his or her interest pursuant to a Qualified Domestic Relations Order[.]

In May 2011, the parties signed a Qualified Domestic Relations Order (QDRO) and Judgment to Divide Public Pension Benefits.[1]  The QDRO provides that husband "shall assign and [wife] is awarded any and all benefits from [husband's TRA]."  The parties agreed that:

> [T]he State of Minnesota [TRA] will pay benefits to [wife] as follows: [wife] is awarded fifty percent (50%) interest in [husband's] benefits determined as of December 31, 2010, deferred; [wife's] award of benefits shall include cost of living or other increases on her portion of the benefits awarded. Any benefits accumulated thereafter shall be the property of [husband] and [wife] shall have no interest in the same.

The parties reserved the issue of spousal maintenance until after the sale of the parties' homestead.  Following that event, the parties stipulated to entry of an order amending the Judgment providing that husband would pay temporary spousal maintenance to wife of $500 per month until wife died or remarried, husband died, or

---

[1] Under the Employee Retirement Income Security Act (ERISA), a QDRO "creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan," which meets certain specificity and substantive requirements. *Langston v. Wilson McShane Corp.*, 828 N.W.2d 109, 113-14 (Minn. 2013) (quoting 29 U.S.C. § 1056(d)(3)), *cert. denied*, 134 S. Ct. 212 (2013).

husband was terminated from his employment or "commences receipt of monthly retirement benefits from [his TRA] defined benefit pension plan, whichever occurs first."

Husband applied for disability benefits in October 2013 and received notice from TRA in June 2014 that his application to receive a "total and permanent disability benefit" had been approved. Husband's disability benefits began accruing on March 1, 2014. TRA divided husband's disability retirement benefit with wife according to the terms of the QDRO, stating that benefits would be paid to wife in the amount of $2,090.37 per month, and to husband in the amount of $2,572.78 per month, for a total benefit of $4,663.15. Disability benefits would continue until husband reaches 65 years of age, at which point TRA would consider husband to be "in retirement status and the election of a retirement annuity plan will become effective."

Husband thereafter moved to modify spousal maintenance by "amending and clarifying Conclusion of Law No. 7 to clarify that the division of [husband's TRA] retirement benefits shall not include a division of disability benefits received by [husband] before retirement[.]" Husband filed an amended motion in November 2014, seeking to conform the QDRO to Conclusion of Law No. 7 and claiming that the QDRO wrongfully awarded a portion of his TRA disability-benefit interest to wife. The district court denied husband's motion by order dated December 2, 2014, ruling that the parties contemplated dividing husband's TRA benefits equally without distinguishing between husband's disability benefits and his retirement benefits. The district court stated:

> The language of the QDRO is consistent with the plain
> and ordinary meaning of [the Judgment], which when read as
> a whole, calls for the division of the TRA benefits. This

5

language is not reasonably susceptible to the interpretation that it does not include disability benefits. Construing [the Judgment] as a whole and interpreting TRA benefits according to its plain and ordinary meaning, the term TRA benefits includes both retirement and disability benefits.

The district court reasoned that to accept husband's interpretation "would impact [wife's] substantive rights and would undermine the financial equity of the parties' stipulated agreement." The district court reiterated that the Judgment is "unambiguous" that the TRA benefits to be divided between husband and wife includes husband's disability benefits.

The district court sua sponte found that husband "achieved the 'Rule of 90' as of March 2, 2014," and, "therefore, pursuant to [the Judgment], [wife] is awarded an additional $20,000 from [husband's] share of the Fidelity 403(b) account."[2]

This appeal followed.

## ISSUES

1.      Did the district court err in determining that the parties' stipulated judgment and decree in a marriage-dissolution action required division of husband's disability benefits?

2.      Did the district court err when it sua sponte awarded wife an additional $20,000 from husband's retirement account depriving husband of his due-process rights?

---

[2] Achieving the "Rule of 90" means that husband was 56.4 years old and had 33.6 years of teaching service, for a total of 90 years, entitling him to retire and become eligible for certain benefits. The district court found that husband "accumulated the additional benefits that qualified him for the 'Rule of 90' benefits.

## ANALYSIS

### I.

The first issue we address is whether the district court erred in concluding that husband's disability benefits are subject to division pursuant to the terms of the parties' stipulated agreement. "The district court has broad discretion when dividing marital property in a dissolution action and will not be reversed absent an abuse of that discretion." *Gottsacker v. Gottsacker*, 664 N.W.2d 848, 852 (Minn. 2003) (citation omitted). However, the interpretation of stipulations in a dissolution judgment is a question of law subject to de novo review and we do not defer to the district court's interpretation of a stipulated provision in a dissolution decree. *Grachek v. Grachek*, 750 N.W.2d 328, 330-31 (Minn. App. 2008) (*citing Anderson v. Archer*, 510 N.W.2d 1, 3 (Minn. App. 1993)). The determination of whether disability funds are income or marital property is a question of law reviewed de novo. *Swanson v. Swanson*, 583 N.W.2d 15, 17 (Minn. App. 1998), *review denied* (Minn. Oct. 20, 1998).

The Judgment entered in May 2011 provided that "[Husband's] TRA retirement benefits shall be divided between the parties. [Wife] is awarded a fifty percent (50%) interest in these benefits determined as of December 31, 2010[.]" The parties agreed in the QDRO that husband "shall assign and [wife] is awarded any and all benefits from [husband's TRA]" and further stated that "the State of Minnesota [TRA] will pay benefits to [wife] as follows: [wife] is awarded fifty percent (50%) interest in [husband's] benefits determined as of December 31, 2010."

Husband argues that the district court committed reversible error by concluding that a 50% interest in husband's "retirement benefits" includes a 50% interest in his disability benefits. Husband argues that the Judgment grants wife "only the right to receive a fraction of [husband's] TRA retirement benefits, not disability benefits." In response, wife argues that the Judgment and QDRO broadly grant "any and all benefits" from husband's TRA account and did not expressly preclude or limit division of husband's TRA disability benefits.

Stipulated judgments, such as the Judgment and QDRO at issue in this case, are "accorded the sanctity of binding contracts," *Shirk v. Shirk*, 561 N.W.2d 519, 521 (Minn. 1997), and we therefore construe a stipulation using the ordinary rules of contract interpretation. *Blonigen v. Blonigen*, 621 N.W.2d 276, 281 (Minn. App. 2001), *review denied* (Minn. Mar. 13, 2001). "We review the language of a contract to determine the intent of the parties." *Caldas v. Affordable Granite & Stone, Inc.*, 820 N.W.2d 826, 832 (Minn. 2012). When the language of a contract is clear and unambiguous, we construe it according to its plain meaning. *Starr v. Starr*, 312 Minn. 561, 562-63, 251 N.W.2d 341, 342 (1977). A writing is ambiguous if it is reasonably subject to more than one interpretation. *Halverson v. Halverson*, 381 N.W.2d 69, 71 (Minn. App. 1986). Whether a contract is ambiguous is a question of law reviewed de novo. *Id*.

The Judgment reflects the parties' agreement to divide husband's TRA retirement benefits between the parties, with wife receiving a 50% interest. Despite the clear language of the Judgment expressly limiting wife's award to 50% of husband's retirement benefits, the district court ruled that the language in the Judgment and the

QDRO unambiguously provided that "the TRA benefits to be divided between the parties include [husband's] disability benefits." We determine, based upon our de novo review, that the district court erred. The parties clearly expressed their intent to limit wife's award to 50% of husband's "retirement benefits" and the district court erred by failing to give effect to the plain and ordinary meaning of the stipulated terms in the Judgment. *See Nelson v. Nelson*, 806 N.W.2d 870, 872 (Minn. App. 2011) ("In interpreting a contract, the language is to be given its plain and ordinary meaning."); *see also Chergosky v. Crosstown Bell, Inc.*, 463 N.W.2d 522, 525-26 (Minn. 1990) (presuming that parties intended the language used to have effect and cautioning courts against interpreting contracts so as to render a provision meaningless); *Hunt v. IBM Mid Am. Employees Fed. Credit Union*, 384 N.W.2d 853, 856 (Minn. 1986) ("[T]he construction of a writing which is unambiguous is for the court, particularly when the intention of the parties is to be gained wholly from the writing." (citation omitted)).

The case of *VanderLeest v. VanderLeest*, 352 N.W.2d 54 (Minn. App. 1984), is instructive. The *VanderLeest* parties stipulated that wife would be entitled to an interest in husband's vested pension plan. *VanderLeest*, 352 N.W.2d at 56. The issue was whether wife was also entitled to receive one-half of husband's monthly disability payments. *Id*. Husband argued at the appellate level that the stipulated judgment should be construed so as to prevent wife from receiving any interest in his disability benefits. *Id*. This court rejected husband's argument, reasoning that the provision was not limited to "any retirement benefit," but more broadly encompassed an interest in husband's "pension plan." *Id*. at 56-57. Because husband's monthly disability benefit was "a

9

benefit received by [husband] by reason of his overall pension plan," the court determined that it fell within the scope of the provision and wife was therefore entitled to a 50% interest in husband's disability benefits. *Id.*

The clear distinction between *VanderLeest* and the present case is that *VanderLeest* involved the division of pension benefits, whereas the parties in this case chose to contractually limit wife's interest to husband's "retirement benefits." *Id.*; *see also Walswick-Boutwell v. Boutwell*, 663 N.W.2d 20, 23-24 (Minn. App. 2003) (affirming district court's award of a portion of husband's disability annuity to wife as marital property under Public Employees Retirement Association pension plan based on finding that pension benefits included both disability benefits and retirement benefits), *review denied* (Minn. Aug. 19, 2003). Our interpretation of the terms in the Judgment and QDRO "harmonizes both the law and the facts of the case," *Stewart v. Stewart*, 400 N.W.2d 157, 159 (Minn. App. 1987), and preserves the "sanctity" of the parties' stipulated judgment by limiting wife's property award to husband's retirement benefits (and $20,000 from his Fidelity account if he reaches the Rule of 90). *Shirk*, 561 N.W.2d at 521.

We therefore hold that the district court erred by modifying the parties' unambiguous stipulation. *See Stieler v. Stieler*, 244 Minn. 312, 319, 70 N.W.2d 127, 131 (1955) (ruling that a proper clarification of a judgment "involves neither an amendment of its terms nor a challenge to its validity"); *see also Gunderson v. Alliance of Computer Prof'ls, Inc.*, 628 N.W.2d 173, 186 (Minn. App. 2001), *review granted* (Minn. July 24, 2001) *and appeal dismissed* (Minn. Aug. 17, 2001) (holding that to the extent a written

agreement specifically states the terms of the parties' bargain, it should be honored);

*Swanson*, 583 N.W.2d at 18 (determining, in absence of stipulation providing otherwise, that nonvested pensions are included within definition of marital property and disability annuity may be divisible). Our conclusion is consistent with decisions in other jurisdictions, which rule that the absence of a reference to "disability benefits" in a stipulated marriage-dissolution judgment and decree precludes an award.[3] We therefore reverse the district court's award of 50% of husband's disability benefits to wife and

---

[3] *See, e.g.*, *Trustees of Dir. Guild of Am.-Producer Pension Benefits Plans v. Tise*, 234 F.3d 415, 421 (9th Cir.) *opinion amended on denial of reh'g*, 255 F.3d 661 (9th Cir. 2000) (stating that QDRO "only renders enforceable an already-existing interest"); *In re Marriage of Hansen*, 62 P.3d 1066, 1068 (Colo. App. 2002) (holding that disability benefits paid to husband prior to age 65 were not marital assets, but benefits paid after age 65 were marital assets); *Gaffney v. Gaffney*, 965 So. 2d 1217, 1221 (Fla. Dist. Ct. App. 2007) ("Only the retirement portion [of a disability pension] is subject to equitable distribution [in a divorce proceeding]."); *Blaine v. Blaine*, 872 So. 2d 383, 384-85 (Fla. Dist. Ct. App. 2004) (reversing and remanding QDRO award that conflicted with final judgment of dissolution); *In re Marriage of Davis*, 678 N.E.2d 68, 70 (Ill. App. Ct. 1997) (finding that where stipulated divorce agreement provided for division of husband's retirement plan, but made "no reference" to disability benefits, "[t]he absence of any reference to disability or disability benefits suggests that the parties did not contemplate such benefits at the time they entered the agreement"); *McCoy v. Feinman*, 785 N.E.2d 714, 721 (N.Y. 2002) ("A proper QDRO obtained pursuant to a stipulation of settlement can convey only those rights to which the parties stipulated as a basis for the judgment. . . . [A] court errs in granting a domestic relations order encompassing rights not provided in the underlying stipulation . . . or a QDRO more expansive than an underlying written separation agreement." (citations omitted)); *Montero v. McFarland*, 895 N.Y.S.2d 257, 259 (App. Div. 2010) ("A QDRO based upon a settlement can only convey those rights agreed to by the parties; a court may not grant a QDRO with terms that differ from the terms of the stipulation of settlement."); *Shanks v. Treadway*, 110 S.W.3d 444, 449 (Tex. 2003) (holding trial court has "no authority to enter an order altering or modifying the original disposition of property").

remand for an award that conforms to the plain language of the parties' stipulated marriage-dissolution judgment.[4]

## II.

The next issue is whether the district court committed reversible error by sua sponte awarding wife an additional share of husband's Fidelity 403(b) dividend account, thereby depriving husband an opportunity to address this issue. "Whether due process is required in a particular case is a question of law, which we review de novo." *C.O. v. Doe*, 757 N.W.2d 343, 349 (Minn. 2008).

The Judgment provided that wife would receive an additional $20,000 award from husband's Fidelity 403(b) dividend account if husband qualified for "Rule of 90" benefit payments. In its December 2, 2014 order denying husband's motion to modify the QDRO, the district court determined that appellant "achieved the 'Rule of 90' as of March 2, 2014," and awarded wife an additional $20,000. The district court found that husband "was 56.4 years old and had 33.6 years of teaching service, for a total of 90 years and was therefore eligible to retire and eligible for the 'Rule of 90' benefits."

There was no motion before the district court to award wife an additional $20,000 distribution from husband's dividend account because he reached the "Rule of 90." "Due process requires that a hearing be "'fair, practicable, and reasonable.'" *Haefele v. Haefele*, 621 N.W.2d 758, 764 (Minn. App. 2001) (citation omitted). Although the district court stated in its order that wife presented a motion to amend the Judgment, no

---

[4] We note that wife remains in the same position to which the parties agreed. She will continue to receive $500 per month in spousal maintenance until husband turns 65 years old, at which time she will receive 50% of his TRA retirement benefits.

such motion appears in the record. Without a motion to amend the Judgment, husband had no opportunity to meaningfully respond to wife's request, and "[n]otice and hearing are the fundamental aspects of due process." *Id.*

Moreover, the appellate record does not provide an adequate factual basis to support the district court's finding that husband qualified for "Rule of 90" benefits. A district court's factual findings must be supported by evidence in the record. *County of Scott v. Johnston*, 841 N.W.2d 357, 363 (Minn. App. 2013). We will reverse a district court's findings when they are "not reasonably supported by the evidence as a whole." *Magnuson v. Cossette*, 707 N.W.2d 738, 744 (Minn. App. 2006). Because the record does not contain sufficient evidence that husband "had 33.6 years of teaching service" entitling him to "Rule of 90" benefits, as found by the district court, we must reverse.[5]

## D E C I S I O N

The district court erred by equating "disability benefits" with "retirement benefits," because the Judgment plainly refers only to "retirement benefits." We therefore reverse and remand to the district court for issuance and implementation of an amended QDRO that conforms to the parties' judgment. Further, we reverse the district court's award of $20,000 to wife based on its sua sponte ruling that husband reached the "Rule of 90."

**Reversed and remanded.**

---

[5] We express no opinion about how the district court should rule if a proper motion is before it.