*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0601**

Leon Asle Baxter, petitioner,
Respondent,

vs.

Debra Kay Baxter,
Appellant.

**Filed March 28, 2016
Affirmed
Kirk, Judge**

Ramsey County District Court
File No. 62-F4-01-000674

Elizabeth A. Schading, Beverly K. Dodge, Barna, Guzy & Steffen, Ltd., Minneapolis, Minnesota (for respondent)

Linda S.S. de Beer, Jennifer L. Ibanez, de Beer & Associates, P.A., Lake Elmo, Minnesota (for appellant)

Considered and decided by Larkin, Presiding Judge; Rodenberg, Judge; and Kirk, Judge.

**UNPUBLISHED OPINION**

**KIRK**, Judge

Appellant-wife challenges the district court's denial of her motion to amend an order dividing her pension benefits following the dissolution of her marriage to respondent-

husband.  Because the order effectuates the intent of the parties, as expressed in their stipulated judgment and decree, we affirm.

## FACTS

Appellant-wife Debra Kay Baxter and respondent-husband Leon Asle Baxter were married from June 1981 until April 2002, when the marriage was dissolved pursuant to a marital-termination agreement.  The judgment and decree included a provision addressing distribution of wife's benefits under the United States Civil Service Retirement System (CSRS), which she earned during her employment by the United States Postal Service from October 1980 until her retirement in January 2013.

With respect to retirement benefits, the judgment and decree provided:

> [Husband] is awarded 50% of [wife]'s retirement and pension fund through her employment at United States Postal Service, *as they exist as of October 25, 2001*, which was the date of the original pre-hearing conference and the date of valuation set by Minn. Stat. § 518.58, subd. 1.  These accounts shall be awarded and distributed pursuant to a Qualified Domestic Relations Order (QDRO), which shall be set forth in a separate document. . . . The [c]ourt shall retain jurisdiction to carry out and effectuate the assignment of said retirement benefits. The responsibility of preparing said QDRO shall be solely that of [husband].
>
> It does not appear that [husband] has any vested pension or retirement accounts with cash value, however, if he does have any vested pension or retirement accounts with cash value as of October 25, 2001, [wife] shall be entitled to an award of 50% of the cash value of those plans as of October 25, 2001.

(Emphasis added.)

In September 2003, the district court signed a domestic relations order (DRO[1]) drafted by husband's attorney and approved by wife's attorney. In November 2014, wife moved to amend the DRO by reducing husband's monthly benefit payments to a fixed amount based upon an estimation of the monthly payment wife had earned as of October 25, 2001. Wife argued that the current DRO's division of benefit payments did not follow the language of the judgment and decree. The district court denied wife's motion. Wife appeals.

## D E C I S I O N

**I.    The district court did not err in concluding that the DRO accurately effectuates the parties' intent to divide the monetary value of wife's pension at the time of payout.**

"The valuation and division of pension rights is generally a matter for the [district] court's discretion." *DuBois v. DuBois*, 335 N.W.2d 503, 505 (Minn. 1983). However, the interpretation of stipulations in a dissolution judgment is a question of law subject to de novo review. *Ertl v. Ertl*, 871 N.W.2d 410, 414 (Minn. App. 2015). Stipulated judgments in dissolution cases are "accorded the sanctity of binding contracts," *Shirk v. Shirk*, 561 N.W.2d 519, 521 (Minn. 1997), and we therefore construe a stipulation using the ordinary

---

[1] The order was captioned "Domestic Relations Court Order." For ease of reference, it is referred to as the DRO. Courts may review a plan administrator's determination that a proposed qualified domestic relations order (QDRO) is "qualified" for purposes of the Employee Retirement Security Act of 1974 (ERISA). *See Langston v. Wilson McShane Corp.*, 776 N.W.2d 684, 693 (Minn. 2009); 29 U.S.C. § 1056(d)(3)(B)(i) (2012 & Supp. 2014) (defining QDRO). However, CSRS is exempt from ERISA because it is a "governmental plan." *See* 29 U.S.C. §§ 1003(b)(1), 1051 (2012) (exempting a "governmental plan" from ERISA); 29 U.S.C. § 1002(32) (2012) (defining "governmental plan").

3

rules of contract interpretation. *See Ertl*, 871 N.W.2d at 415 (considering a stipulated QDRO to be part of the stipulated judgment).

"We review the language of a contract to determine the intent of the parties." *Caldas v. Affordable Granite & Stone, Inc.*, 820 N.W.2d 826, 832 (Minn. 2012). When the language of a contract is clear and unambiguous, "its language must be given its plain and ordinary meaning." *301 Clifton Place L.L.C. v. 301 Clifton Place Condo. Ass'n*, 783 N.W.2d 551, 564 (Minn. App. 2010). "[A] dissolution provision is unambiguous if its meaning can be determined without any guide other than knowledge of the facts on which the language depends for meaning." *Landwehr v. Landwehr*, 380 N.W.2d 136, 138 (Minn. App. 1985) (alteration in original) (quotation omitted). A writing is ambiguous if it is reasonably subject to more than one interpretation. *Halverson v. Halverson*, 381 N.W.2d 69, 71 (Minn. App. 1986).

When a judgment and decree is entered, it is final, subject to the right of appeal, unless a party establishes in a timely motion a basis for reopening the judgment. Minn. Stat. § 518.145, subds. 1, 2 (2014). Such bases include newly discovered evidence, fraud, mistake, or excusable neglect. *Id.*, subd. 2. Still, the district court may, in its discretion, issue an order that implements or enforces specific provisions of the judgment and decree, so long as the order does not alter the terms of the original judgment and decree or affect the parties' substantive rights. *Erickson v. Erickson*, 452 N.W.2d 253, 255-56 (Minn. App. 1990); *see Potter v. Potter*, 471 N.W.2d 113, 114 (Minn. App. 1991) (observing that the district court has the power to clarify and construe the judgment and decree so long as the parties' substantive rights are unchanged); *Fastner v. Fastner*, 427 N.W.2d 691, 698

(Minn. App. 1988) (recognizing that the district court has the discretion to enter a QDRO to implement division of pension right).

Under the terms of the DRO, the "marital portion" of the CSRS benefits includes "benefits from all employment and service between" the date of the parties' marriage and October 25, 2001, the date of the valuation. The DRO states that husband "is entitle[d] to a pro[ ]rata share of [wife]'s monthly self-only annuity based on service between [those dates] under CSRS." Under federal regulations, the "pro rata share" is defined as follows:

> [O]ne-half of the fraction whose numerator is the number of months of Federal civilian and military service that the employee performed during the marriage and whose denominator is the total number of months of Federal civilian and military service performed by the employee through the day before the effective date of phased retirement or separation for retirement, as applicable to the annuity calculation.

5 C.F.R. § 838.621(a) (2014).

In support of her motion to amend the DRO, wife submitted actuarial calculations of her "accrued monthly benefit" on October 25, 2001, reduced by 25% to account for social security benefits that she would have accrued had she not been earning retirement benefits through CSRS. The actuary calculated husband's proposed fixed monthly payment by multiplying this "accrued monthly benefit" "by 50% times 20.25 years of marital service divided by 20.9167 total years of service at October 25, 2001." The actuary did not explain how she calculated wife's "accrued monthly benefit," nor whether she included any adjustments, such as for the cost of living.

Retirement benefits are usually divided using one of two methods. *DuBois*, 335 N.W.2d at 505. Under the "present cash value" method, the value of the pension for

5

property-division purposes is set at its "present value," which discounts an award to be received in the future to that amount which, if presently received, could be invested in order to yield the future sum. *Johnson v. Johnson*, 627 N.W.2d 359, 362 (Minn. App. 2001), *review denied* (Minn. Aug. 15, 2001). In other words, the "present value" is the amount that "a person would take *now* in return for giving up the right to receive an unknown number of monthly checks in the future." *DuBois*, 335 N.W.2d at 506. Under this method, the pension is awarded to the employee spouse at its "present value" and the non-employee spouse is awarded an offsetting amount of non-pension property. *Johnson*, 627 N.W.2d at 362.

Under the "reserved jurisdiction" method, the district court reserves jurisdiction over the division of the pension until the employee's retirement and divides the actual monetary benefit at that time. *DuBois*, 335 N.W.2d at 505. This method requires a "determination of a fixed percentage for the non-employee spouse of any future payments the employee receives under the plan." *Taylor v. Taylor*, 329 N.W.2d 795, 799 (Minn. 1983). It "should be used where present value determinations are unacceptably speculative or there are not enough assets to equitably require that benefits due in the future be split presently." *Id.* Here, neither party disputes that the judgment and decree used the "reserved jurisdiction" method in dividing wife's pension benefits.

In this case, the DRO applies the formula laid out in *Janssen v. Janssen*, 331 N.W.2d 752 (Minn. 1983), which has been favorably cited as an equitable way to divide a pension that contains marital and non-marital property. *See McGowan v. McGowan*, 532 N.W.2d 258, 260-61 (Minn. App. 1995); *Hortis v. Hortis*, 367 N.W.2d 633, 636 (Minn. App. 1985);

6

*Kottke v. Kottke*, 353 N.W.2d 633, 637 (Minn. App. 1984), *review denied* (Minn. Dec. 20, 1984). This formula is often used when there are "contingencies on the actual payment of pension benefits." *Janssen*, 331 N.W.2d at 756. It provides:

> The marital interest in each payment will be a fraction of that payment, the numerator of the fraction being the number of years (or months) of marriage during which benefits were being accumulated, the denominator being the total number of years (or months) during which benefits were accumulated prior to when paid.

*Id.* Wife does not dispute the district court's finding that she was not eligible to receive retirement-benefit distributions at the time of the divorce. *See* 5 CFR § 838.211(a)(3) (2014); Minn. Stat. § 518.58, subd. 4(5) (2014).

The judgment and decree's award to husband of "50% of [wife]'s retirement and pension fund . . . as they exist as of October 25, 2001," is similar to language in *Mikoda v. Mikoda*, 413 N.W.2d 238 (Minn. App. 1987), *review denied* (Minn. Dec. 22, 1987). In that case, the husband asserted that the dissolution court's award of "20% of all the right, title and interest in the pension plans, profit sharing plans . . . which [the husband] *has* with his employer" clearly indicated an intent to award the wife 20% of his vested interest as it existed at the time of dissolution, and not a share in the increase in his pension interest occurring after the dissolution. *Mikoda*, 413 N.W.2d at 242 (emphasis in original). We agreed with the district court's conclusion that use of the present tense showed an intent for the wife to receive 20% of the *benefits* accrued at the time of dissolution, and not of their value at that time. *Id.* The *Mikoda* court noted that the "record contains no valuation or proposed valuation of the pension benefit contemporaneous with the dissolution decree."

*Id.*; *see Faus v. Faus*, 319 N.W.2d 408, 413 (Minn. 1982) (affirming an award to wife of 50% of husband's retirement units existing at time of dissolution, although the value of pension per unit increased with each of husband's subsequent pay increases).

As in *Mikoda*, the record in this case contains no valuation of wife's pension at the time of the judgment and decree. Even now, the record includes only a conclusory statement about husband's portion of the monthly pension payment based upon the pension's value on October 25, 2001; it does not name the value of the pension at that time or describe the method of calculating husband's portion. Further, the fact that the judgment and decree explicitly provides for division of the "cash value" of any pension or retirement account that husband may have strongly indicates that the parties intended a different method of division for wife's retirement and pension fund. We conclude that, by the clear terms of the judgment and decree, the DRO properly divides the pension's monetary value at the time of the payments. Therefore, the district court did not err in denying wife's request to modify the DRO to divide the estimated monetary value on October 25, 2001. *See Erickson*, 452 N.W.2d at 255-56.

**II.    The district court did not err in denying wife's request to reduce husband's payments by the portion that replaces social security benefits.**

Wife argues that the portion of her pension payment to be divided with husband should not include the amount intended to replace social security benefits that she would have received if she were not covered by the CSRS. Nothing in the judgment and decree indicates that this part of her payment is excluded from her "retirement and pension fund through her employment at United States Postal Service." To the contrary, in notifying

wife of her benefits, the Office of Personnel Management did not differentiate between benefits replacing social security and other benefits. By the clear terms of the judgment and decree, the DRO should not reduce husband's payments by the amount attributable to social security replacement. *Ertl*, 871 N.W.2d at 414. Therefore, the district court did not err in denying wife's request to amend the DRO to do so. *See Erickson*, 452 N.W.2d at 255-56.

**III.    Any issues regarding additional terms in the DRO are waived.**

Wife asserts that the district court erred by retaining a DRO that "overreach[es] well beyond" the terms of the judgment and decree by including provisions such as a former-spouse survivor annuity and for division of any disability payments. She did not request relief from these terms at the district court. Because these issues were not raised below, they are not properly before this court on appeal. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988).

**Affirmed.**